161 Cal.App.3d 465 (1984)
207 Cal. Rptr. 512
In re the Marriage of MARILYN JANE and HERBERT ADOLPH JACOBSON.
MARILYN JANE JACOBSON, Respondent,
v.
HERBERT ADOLPH JACOBSON, Appellant.
Docket No. B004200.
Court of Appeals of California, Second District, Division Six.
October 31, 1984.
*468 COUNSEL
Cohen, Alexander & Clayton and Leonard Alexander for Appellant.
Nordman, Cormany, Hair & Compton, Michael C. O'Brien and Glen M. Reiser for Respondent.
OPINION
STONE, P.J.
Herbert Adolph Jacobson (husband) appeals from a judgment on two issues bifurcated from the dissolution of marriage trial  his military retirement benefits and Marilyn Jane Jacobson's (wife) personal injury award. The judgment awarded wife $602.71 per month from January 27, 1983, as her interest in husband's Navy retirement benefits and further awarded her the major portion of proceeds from a medical malpractice judgment.
Husband contends that: (1) the trial court did not have jurisdiction to apply California law to military retirement benefits; (2) the military retirement plan should retain its character as separate property under Iowa state law; (3) the federal Uniformed Services Former Spouses' Protection Act (FUSFSPA) specifically prohibits application of principles enunciated in In re Marriage of Gillmore (1981) 29 Cal.3d 418 [174 Cal. Rptr. 493, 629 P.2d 1] to a service member eligible to retire but still on active duty; (4) California law mandates distribution of the military retirement benefits to husband to equalize distribution of personal injury award to wife; and (5) the trial court's calculation of wife's community interest in husband's pension was incorrect. We find no error and affirm the judgment.

PROCEDURAL HISTORY
June 11, 1980, wife filed a petition for legal separation and order to show cause for temporary spousal, child support and injunctive relief. The parties, married 15 years, had 2 minor children.
June 30, 1980, husband filed a responsive declaration to the order to show cause and also a notice of motion to dismiss the California proceeding based on forum non conveniens and lack of consent to the request for legal separation. (Civ. Code, § 4508, subd. (b).)
July 1, 1980, the parties signed a handwritten stipulation and order on the order to show cause, signed by a commissioner and filed that date, which *469 provided: "Petitioner agrees to accept her % interest in Respondent's Pension, as opposed to a cash out, when Respondent first becomes eligible to retire from U.S. Navy [20 years] in exchange Respondent will forthwith dismiss with Prejudice Iowa dissolution proceeding and further agrees to have case resolved under Calif(ornia) law & here." Husband's response to the request for legal separation listed his United States Navy pension to be divided by the court. On November 24, 1980, at trial on the dissolution of marriage, husband, through different counsel, moved that the court terminate the action and find that Iowa had subject matter jurisdiction. The court denied the motion. Upon stipulation by the parties, the court amended the petition from legal separation to dissolution of marriage.
November 25, 1980, prior to conclusion of trial the parties stipulated in writing as follows: "The court to reserve jurisdiction over petitioner's personal injury claim and respondent's retirement rights through U.S. Navy, reservation to include all aspects, including whether assets are separate or community, their value and parties' rights to distribution thereof." Said stipulation was accepted by the court and incorporated into the interlocutory judgment. The court entered final judgment of dissolution December 10, 1981.
December 6, 1982, wife recovered judgment of $231,627 (net was $151,859.18) against the United States Government because of medical malpractice by naval physicians. Wife incurred the personal injuries as a result of breast augmentation surgery 36 days before the parties separated.
January 26, 1983, husband became eligible to but did not retire from the Navy. His pension as of that date was $1,579.85 per month.
March 11, 1983, wife filed notice of motion to divide husband's pension rights and to determine distribution of her personal injury award. The instant appeal follows the trial court's August 19, 1983 judgment.

DISCUSSION

I

JURISDICTION
It is undisputed that husband is a domiciliary of Iowa, and a resident of California only through military assignment. Title 10 United States Code section 1408(c)(4) sets forth the jurisdictional bases for a California court to apply California law to military retirement benefits: "(4) A court may not treat the disposable retired or retainer pay of a member in the manner *470 described in paragraph (1) unless the court has jurisdiction over the member by reason of (A) his residence, other than because of military assignment, in the territorial jurisdiction of the court, (B) his domicile in the territorial jurisdiction of the court, or (C) his consent to the jurisdiction of the court."
The trial court found husband consented to the court's jurisdiction by signing the July 1980 stipulation and by filing a response to the petition for legal separation in which he listed the naval pension as community or quasi-community property. Husband contends that the trial court erred because the November 25, 1980, stipulation superseded and abrogated that of July 1, the effect of which was to leave open for later determination whether the property was separate or community and the question of which state's substantive law should be applied. According to husband, FUSFSPA creates a "new express protection for the service member"  the right to have his military retirement benefits determined by his home or domiciliary state  and California, although it has in personam jurisdiction to hear the matter, must apply the law of Iowa.
(1) Husband's interpretation of FUSFSPA is broader than ours. We find nothing in the statutory scheme to indicate that it means other than what it says, e.g., that a court may treat disposable retired pay either as property solely of the member or as property of the member and his spouse in accordance with the law of the jurisdiction of such court (10 U.S.C. § 1408(c)(1)) and that a court may have jurisdiction over the member by his consent to that court's jurisdiction. (10 U.S.C. § 1408(c)(4)(C).) Even if the November 25, 1980, stipulation abrogated the July 1, 1980 stipulation, husband, by his election to respond to the petition and forego his motion to dismiss on forum non conveniens grounds, made a general appearance and thereby consented to the jurisdiction of the court and the application of the substantive law of California. (1 Witkin, Cal. Procedure (2d ed. 1970) Jurisdiction, § 118, pp. 646-647.) Consequently, California's jurisdiction under FUSFSPA was clear. (§ 1408(c)(4)(C).) "Once a party has generally consented to a court's jurisdiction, it may not be attacked later." (In re Marriage of Sarles (1983) 143 Cal. App.3d 24, 29 [191 Cal. Rptr. 514].)
Husband further argues that since the two bases of consent found by the trial court preceded the existence of FUSFSPA, he could not waive a right he did not know he had. His analysis is based upon a faulty premise  that FUSFSPA created a new right to have the serviceman select the law which will be applied to his military retirement plan. Not so. On June 26, 1981, the United States Supreme Court decided McCarty v. McCarty (1981) 453 U.S. 210 [69 L.Ed.2d 589, 101 S.Ct. 2728], holding, inter alia, that military pensions were not subject to division as community property upon dissolution *471 of marriage. Congress' answer to that decision was the enactment of FUSFSPA, which in pertinent part provided: "Subject to the limitations of this section, a court may treat disposable retired or retainer pay payable to a member for pay periods beginning after June 25, 1981, either as property solely of the member or as property of the member and his spouse in accordance with the law of the jurisdiction of such court." (10 U.S.C. § 1408(c)(1); italics added.)
"The selection of the period after June 25, 1981, as that addressed by the above statute can only be taken as an oblique reference to the McCarty decision and appears intended to repair the seamless web of pre-McCarty law as though never torn asunder. [¶] ... Although effective February 1, 1983, and containing certain provisions which were not operative until that date, the use of the date McCarty was decided as a reference in 10 United States Code section 1408(c)(1), in our opinion, evidences a legislative intent that the law relative to community property treatment of military retirement pensions be as though McCarty did not exist, i.e., that such pensions would be subject to division as community property both before and after June 25, 1981." (In re Marriage of Frederick (1983) 141 Cal. App.3d 876, 879 [190 Cal. Rptr. 588], fns. omitted.)
FUSFSPA, in effect, placed husband exactly where he was prior to McCarty. It gave him no greater rights than he had before. As a nondomiciliary he could have moved to dismiss proceedings on forum non conveniens grounds or consent to the jurisdiction. He chose the latter.
Nor was there "failure of consideration" in the July 1, 1980, stipulation due to wife's failure to continue agreed-upon counseling. Husband's agreement to dismiss with prejudice his Iowa dissolution proceedings and to have the case resolved under California law was expressly in exchange for wife's agreement to accept her interest in his pension when he became eligible to retire, as opposed to an immediate cash-out.

II

CALIFORNIA LAW PROPERLY APPLIED
(2) Husband next contends that even if he consented to California's jurisdiction, the military retirement plan should retain its character as separate property under Iowa law because the interest of the State of California is insufficient to justify its reclassification without violating the due process clause of the Fourteenth Amendment (U.S. Const., 14th Amend.) and the privileges and immunities clause of article IV, section 2 of the federal Constitution.
*472 In re Marriage of Roesch (1978) 83 Cal. App.3d 96 [147 Cal. Rptr. 586] upon which husband relies is distinguishable however. In Roesch, the parties had no connection with California until the husband moved to the state and filed for dissolution. Wife, child and real property were in Pennsylvania, their domicile. The appellate court held that wife was entitled to protection of Pennsylvania laws and that California's quasi-community property statute could not be applied unless both parties had changed their domicile to California and subsequent thereto sought legal alteration of their marital status in California courts. (83 Cal. App.3d at p. 107.) Roesch did not address consent to jurisdiction.
In re Marriage of Fransen (1983) 142 Cal. App.3d 419 [190 Cal. Rptr. 885] as modified at 143 Cal. App.3d 357h held that the second Roesch criterion is satisfied when either spouse initiates a legal proceeding to alter the marital status. Fransen held that the trial court erred in failing to divide the percentage of military pension earned outside California as quasi-community property. Both parties were domiciled in California and wife filed the dissolution action. FUSFSPA provides consent as an alternative to domicile for jurisdiction. Therefore, the criteria of Roesch and Fransen are met  wife's domicile, husband's consent (as an alternative to domicile) and wife's request to alter the marital status. Even assuming, arguendo, that the November 25 stipulation abrogated that of July 1, if the parties meant to reserve to husband the right to have the substantive law of Iowa applied to the military pension, they should have so indicated in the November 24, 1980, stipulation which reads "whether assets are separate or community." Iowa law does not recognize community property but mandates that division of property is based on each marital partner's right to a just and equitable share of the property accumulated as the result of their joint efforts. (In re Marriage of Hitchcock (Iowa 1981) 309 N.W.2d 432, 437; see Iowa Code Annotated, vol. 39 Domestic Relations, § 598.21.) Since we find that husband consented to have the substantive law of California apply to his military retirement, it is unnecessary to speculate whether Iowa law would have achieved the same result.

III

FUSFSPA DOES NOT PROHIBIT APPLICATION OF GILLMORE

(3) We disagree with husband's argument that FUSFSPA establishes a clear congressional intent that payment of retirement benefits to former spouses is to be made only when the service member retires. His argument is based upon the statutory definition of disposable retired pay as the total monthly retired pay to which a member is entitled. (10 U.S.C. § 1408(a)(4).) If the intent were otherwise, he continues, the statute would *473 not provide that a court may not order a service member to apply for retirement or retire at a particular time in order to effectuate any payment of benefits. (10 U.S.C. § 1408(c)(3).) Eligibility, according to husband, is not the same as entitlement to receive. The statutory provision, however, does not refer to actual receipt of retired pay, only that "In the case of a member not entitled to receive retired or retainer pay on the date of the effective service of the court order, such payments shall begin not later than 90 days after the date on which the member first becomes entitled to receive retired or retainer pay." (10 U.S.C. § 1408(d)(1), italics added.)
In In re Marriage of Scott (1984) 156 Cal. App.3d 251 [202 Cal. Rptr. 716], appellant raised the identical issue that FUSFSPA precludes distributing any interest in military pension benefits until actual retirement. The reviewing court held that "... FUSFSPA expresses only a general congressional intent that military pensions be treated similarly to other pension [sic] under applicable state community property law." (P. 254.)
We agree with Scott. We do not believe entitlement under FUSFSPA means actual receipt of retirement pay, but rather eligibility or Congress would have designated actual retirement as the criterion for entitlement. Moreover, husband's interpretation would result in an unequal application of California law. It therefore follows that the rule stated in Gillmore controls: Husband may not time his retirement to deprive wife of her community interest and is required to reimburse her for her community share while he continues working. (In re Marriage of Gillmore (1981) 29 Cal.3d 418, 427 [174 Cal. Rptr. 493, 629 P.2d 1].)

IV

TRIAL COURT DID NOT NEED TO AWARD MILITARY PENSION TO HUSBAND TO EQUALIZE DISTRIBUTION OF PERSONAL INJURY PROCEEDS TO WIFE
(4) Husband argues that Civil Code section 4800, subdivision (c) which provides for assignment of community property personal injury damages to the injured spouse was not intended to change the legislative directive in Civil Code section 4800, subdivision (a) that the community property be divided equally. The reviewing court in In re Marriage of Morris (1983) 139 Cal. App.3d 823, 826 [189 Cal. Rptr. 80] addressing the same issue stated that the opening phrase in Civil Code section 4800, subdivision (c)  "Notwithstanding the provisions of subdivision (a)"  "strongly suggests the Legislature intended the disposition of community property personal injury damages provided for in subdivision (c) to be an exception to the equal division requirement of subdivision (a)" and cited Judge Markey's *474 discussion of the statute in 2 California Family Law Practice and Procedure, pages XX-XX-XX-XX as basis for their conclusion.
The statutory predecessor of Civil Code section 4800, subdivision (c) was Civil Code section 146, subdivision (c), and under the former section 146, subdivision (c), "when community property personal injury damages were `assigned' to the injured spouse, no offsetting property award was required to be made to the other spouse, and the fact that the Legislature used the same expression in subdivision (c) of section 4800 further suggests it intended similar consequences." (Morris, supra, at pp. 827-828.)
We agree with the Morris court and Judge Markey that subdivision (c) of section 4800 is not crystal clear. Nevertheless, under that section, the trial court is vested with broad discretion to distribute damages upon dissolution. Factors which the court might consider include duration of marriage after injuries occurred, effect of injuries on the noninjured spouse, and whether a major portion if not the entirety of the award is necessary to "make whole" the injured spouse. (See In re Marriage of Mason (1979) 93 Cal. App.3d 215 [189 Cal. Rptr. 80]; In re Marriage of Devlin (1982) 138 Cal. App.3d 804 [189 Cal. Rptr. 1].)
In the case at bench the trial court was aware that the facts which led to the malpractice claim arose only 36 days before the parties' separation and of the traumatic nature of the injury as well as the apparent psychological effects. We find substantial evidence to support the trial court's exercise of discretion and agree with Morris that community property personal injury damages were intended to be an exception to the equal division mandate found in Civil Code section 4800 subdivision (a).

V

TRIAL COURT'S CALCULATIONS WERE CORRECT
(5) Husband protests that the trial court incorrectly applied the "time rule" to determine wife's ratio for her community interest by using his base pay at time of trial rather than at date of separation. He contends the difference in his base pay between those dates is his separate property and cites In re Marriage of Behrens (1982) 137 Cal. App.3d 562 [187 Cal. Rptr. 200] for support. Behrens, however, involved a profit-sharing plan as opposed to a pension plan: "We are not dealing here with an indivisible appreciating asset which is to be valued, as a general rule, at the time of trial rather than at date of separation. (Cf. Civ. Code, § 4800, subd. (a).) The *475 value of Husband's profit-sharing account can readily be divided, for purposes of characterization, into preseparation and postseparation increments. Patently, the corporation's contributions to Husband's account were intended and received as a form of compensation; postseparation contributions would, by the orthodox rule, be Husband's separate property. (Civ. Code, § 5118.)" (137 Cal. App.3d 562, 577.)
The "time rule" is an acceptable method of apportioning retirement benefits. (See In re Marriage of Judd (1977) 68 Cal. App.3d 515, 522 [137 Cal. Rptr. 318]; In re Marriage of Adams (1976) 64 Cal. App.3d 181, 186 [134 Cal. Rptr. 298]; In re Marriage of Freiberg (1976) 57 Cal. App.3d 304, 310 [127 Cal. Rptr. 792], disapproved on other grounds In re Marriage of Gillmore, supra, 29 Cal.3d 418, 425.) In Adams, husband also argued that any increase in retirement after date of separation was his separate property. The appellate court disagreed, noting that increase in retirement benefits is effected by community contributions accrued prior to date of separation and that the nonemployee spouse is entitled to have her community interest valued as of date of retirement even though the community portion must be ascertained as of date of separation.[1]
Since husband continued working, the trial court herein calculated wife's interest in his pension as though husband retired at time of trial. There was no abuse of discretion. Wife, however, irrevocably elected to take her share of the pension now and must forego any appreciation in the pension's value resulting from husband's continued service. (In re Marriage of Scott, supra, 156 Cal. App.3d 251, 254; In re Marriage of Gillmore, supra, 29 Cal.3d 418, 428, fn. 9.) However, she will be entitled to share in benefits such as automatic cost-of-living adjustments which would have been received had husband actually retired on the date she elected to take her interest. (In re Marriage of Scott, supra, at p. 255.)
Furthermore, the trial court did not abuse its discretion in failing to actuarially determine the present value of husband's retirement benefits. (See In re Marriage of Shattuck (1982) 134 Cal. App.3d 683, 687 [184 Cal. Rptr. 698].) Husband presented no evidence of actuarial uncertainties at trial. Unlike Shattuck, the trial court herein was not calculating the present value of the pension for an immediate cash-out or offset against other assets.
*476 The judgment is affirmed.
Abbe, J., and Gilbert, J., concurred.
Appellant's petition for a hearing by the Supreme Court was denied January 16, 1985.
NOTES
[1] The Iowa Supreme Court applied the "time rule" in ascertaining wife's interest in husband's future military retirement in In re Marriage of Jones (Iowa 1981) 309 N.W.2d 457.