[No. D001539. Fourth Dist., Div. One. Nov. 25, 1985.]

In re the Marriage of BARBARA JOAN and
ROBERT WOOD CHAMBERS.
BARBARA JOAN CHAMBERS, Appellant, v.
ROBERT WOOD CHAMBERS, Respondent.

COUNSEL

Robert E. Hunter and Hunter & Bovarnick for Appellant.

Paul F. Geitner for Respondent.

OPINION

**WIENER, Acting P. J.**—In *Henn* v. *Henn* (1980) 26 Cal.3d 323 [161 Cal.Rptr. 502, 605 P.2d 10] the California Supreme Court held the doc-

trines of res judicata and collateral estoppel did not bar a spouse from recovering his or her community interest in the vested and matured military pension benefits omitted from the petition and later judgment of dissolution of marriage. The *Henn* court qualified full retroactive enforcement of such rights, however, by allowing the military retiree to raise the defenses of equitable estoppel and laches. (*Id.* at pp. 332-333.) In such cases the trial court must apply equitable principles to prevent unfairness to a spouse who may have placed substantial reliance on the judgment. (*Hill* v. *Hattrem* (1981) 117 Cal.App.3d 569, 574 [172 Cal.Rptr. 806].)

The question in this case is whether the court improperly considered the effective date of the Federal Uniformed Services Former Spouses' Protection Act (FUSFSPA) in precluding Barbara Chambers from obtaining full retroactive recovery of her share in her former husband's military retirement. The court ruled Barbara had the burden of proving why she was entitled to receive a share of military retirement payments which were received before February 1, 1983. The court said "citizens [Robert] ought to be able to rely on what the Supreme Court tells them and what is published in newspapers." We conclude this mushy record is inadequate to support the court's equitable judgment and reverse the order.

### Factual and Procedural Background

Barbara and Robert Chambers were married on August 17, 1972, separated on September 19, 1979, and divorced on January 13, 1981. In April 1981 the court heard and resolved support and property issues, awarding Barbara $350 monthly spousal support for one year, reserving jurisdiction to modify the amount and duration of support and reserving jurisdiction over Robert's monthly military retirement of $1,363. On February 27, 1984, Barbara successfully obtained an award of 13.83 percent of Robert's pension retroactive to February 1, 1983, the effective date of FUSFSPA. Robert was ordered to pay the accrued sum of $2,450.50 in monthly installments of $204.21 in addition to paying Barbara her entitlement of $188.50 per month. The court also ordered Robert to pay monthly spousal support of $175 commencing March 1, 1985, the date when the accrued pension arrearage was to have been paid in full, to continue until further order of court. Barbara appeals. Her primary contention is that the court erred in failing to make the order awarding her a share in Robert's pension retroactive to the date of their separation in 1979 rather than to February 1, 1983.

### Discussion

Slightly more than a decade ago *In re Marriage of Fithian* (1974) 10 Cal.3d 592 [111 Cal.Rptr. 369, 517 P.2d 449] held "federal military re-

tirement pay is properly the subject of California community property law . . . ." (*Id. at p.* 595.) "[T]he application of [such law does not interfere] in any way with the administration or goals of the federal military retirement pay system." (*Id.* at p. 604.) These categorical statements appeared to eliminate the uncertainty associated with the disposition of military retirement pay in family law cases. This period of seeming tranquility came to an abrupt end, however, a mere seven years later. *McCarty* v. *McCarty* (1981) 453 U.S. 210 [69 L.Ed.2d 589, 101 S.Ct. 2728], decided on June 26, 1981, held the application of community property principles impermissibly conflicts with the federal military retirement scheme precluding state court disposition of such property. (*Aloy* v. *Mash* (1985) 38 Cal.3d 413, 420 [212 Cal.Rptr. 162, 696 P.2d 656].) *McCarty,* however, was not graciously received by either the California appellate courts or the United States Congress. The courts denied *McCarty* retroactive application holding pre-*McCarty* judgments treating military pensions as community property were not effected by *McCarty.* (See, e.g., *In re Marriage of Sheldon* (1981) 124 Cal.App.3d 371, 377-380 [177 Cal.Rptr. 380].) Congress enacted FUSFSPA for the purpose of abrogating all applications of *McCarty.* (*In re Marriage of Buikema* (1983) 139 Cal.App.3d 689, 691 [188 Cal.Rptr. 856] citing J. Explanatory Statement of the Com. of Conf. on Pub. L. No. 97-252 from House Conf. Rep. No. 97-749, Aug. 16, 1982, pp. 166-168. 128 Cong. Rec. (1982).) After FUSFSPA the California courts again manifested their attitude toward *McCarty* by unanimously holding FUSFSPA obliterated all traces of *McCarty. In re Marriage of Buikema, supra,* 139 Cal.App.3d 689 said FUSFSPA "overrules *McCarty*" and "*McCarty* is no longer the law." (*Id.* at p. 691; see also *In re Marriage of Cullen* (1983) 145 Cal.App.3d 424, 427 [193 Cal.Rptr. 590].) *In re Marriage of Frederick* (1983) 141 Cal.App.3d 876 [190 Cal.Rptr. 588] explained there was no need to be concerned with *McCarty* since FUSFSPA evidenced a legislative intent that military retirement could be treated "as though *McCarty* did not exist." (*Id.* at p. 879; see also *Mueller* v. *Walker* (1985) 167 Cal.App.3d 600, 605 [213 Cal.Rptr. 442].) "[T]here is no longer any *McCarty* rule to be retroactively applied." (*Id.* at p. 880.) *In re Marriage of Mastropaolo* (1985) 166 Cal.App.3d 953 [213 Cal.Rptr. 26], stated "[t]he manifest purpose of FUSFSPA was to nullify the *McCarty* decision." (*Id.* at p. 960.)

Thus courts using similar reasoning held *McCarty* was not to be retroactively applied permitting pre-*McCarty* judgments disposing of military retirement pay to stand while holding FUSFSPA to be fully retroactive also allowing the courts to dispose of military retirement pay. Seen as a continuum of the common law on this subject it is fascinating that in a real world context although the California courts had moved through pre-*McCarty,* *McCarty* and post-*McCarty* phases, the end result inevitably was the same.

Military retirement pay was to be treated as a community asset to be divided between the parties in accordance with their respective community interest.

*In re Marriage of Sarles* (1983) 143 Cal.App.3d 24 [191 Cal.Rptr. 514] recognized differences in timing of court orders affecting military pensions did not change the result on appeal. "The distinction between the present case and the *Buikema* [In re Marriage of Buikema (1983) 139 Cal.App.3d 689], *Frederick* [*In re Marriage of Frederick* (1983) 141 Cal.App.3d 876], *Hopkins* [*In re Marriage of Hopkins* (1983) 142 Cal.App.3d 350 (191 Cal.Rptr. 70)] and *Ankenman* [*In re Marriage of Ankenman* (1983) 142 Cal.App.3d 833 (191 Cal.Rptr. 292)] cases is that here the trial court, in reliance on *McCarty,* expressly set aside the wife's previously ordered right to participate in the husband's pension. In *Ankenman* the original ruling was post-*McCarty.* In *Buikema, Frederick* and *Hopkins* no such ruling was made post-*McCarty.* However, the language of FUSFSPA, the congressional intent as set forth in the materials cited in *Buikema* and the equitable considerations in *Hopkins* require the decision of this court to be the same." (*Id.* at p. 28.) That same result was to allow retroactive disposition of military retirement pay. In approving *Ankenman* the court tacitly approved *Ankenman's* statement that retroactive application does not deprive the military retiree of due process of law and that subject to equitable considerations the former spouse may receive her "full amount of her community share in [the] retirement benefits received to date." (*In re Marriage of Ankenman* (1983) 142 Cal.App.3d 833, 838 [191 Cal.Rptr. 292].)

The relevance of the foregoing discussion to the present case is that Robert and other similarly situated military retirees are placed in the unique position of being unable to rely on a decision of the United States Supreme Court. Although the trial court here may have been colloquially correct in saying it was not "reasonable to expect Mr. Chambers to disbelieve the ruling of the United States Supreme Court [in *McCarty*]," that statement ignores the California judiciary's reception to *McCarty.* ■ In every case in which jurisdiction over military retirement pay was reserved, California courts have awarded the former spouse a full retroactive share in the retirement payments received subject only to equitable considerations. Here, having elected not to proceed with a judicial declaration of his rights during *McCarty's* short life Robert cannot now have greater rights than had he done so. Consequently, the trial court was not legally precluded from awarding Barbara an interest in Robert's military retirement pay to the date of the parties' separation. ■ Barbara did not have the burden of showing why she should be entitled to a full retroactive entitlement. Robert has the burden to establish equitable reasons why Barbara is not entitled to full retroactive entitlement. (*In re Marriage of Ankenman, supra,* 142 Cal.App.3d 833, 838.)

Our lengthy discussion of this issue relies on a scanty record. Twenty minutes was devoted to the contested hearing. No oral testimony was presented. The only evidence was contained in the respective declarations of Barbara and Robert. Robert's declaration fails to mention equitable considerations which would warrant relief for retirement benefits received prior to the hearing. Pressured by constraints of time and the paucity of factual information the court attempted to reach an equitable result. Unfortunately, that result lacks factual support and reversal is required. Because of our conclusion on retroactivity we do not discuss Barbara's contention relating to the court's error on the timing and amount of her spousal support award.

### Disposition

Order reversed. Each party shall bear his or her costs for this appeal.

Work, J., and Kintner, J.,* concurred.

---

*Assigned by the Chairperson of the Judicial Council.