[No. D002869. Fourth Dist., Div. One. Apr. 23, 1986.]

In re the Marriage of BERYL GERALDINE and
WILLIAM ROBERT CASTLE.
BERYL GERALDINE CASTLE, Appellant, v.
WILLIAM ROBERT CASTLE, Appellant.

208

**COUNSEL**

Hunter & Ryan and Daniel B. Hunter for Appellant Husband.

Arthur J. Johns for Appellant Wife.

---

**OPINION**

**JONES, J.**\*—In this case involving the division of a military pension, both parties, William Robert Castle (William) and Beryl Geraldine Castle (Beryl), appeal from portions of the trial court order.

A final judgment dissolving this marriage was entered on April 10, 1979. The interlocutory judgment, entered November 30, 1978, formally incorporated certain stipulations of the parties, including William's consent to the retention of jurisdiction over the value, nature and extent of Beryl's right to William's military retirement benefits.

On September 19, 1984, Beryl moved for division of William's Navy retirement benefits. After hearing the matter on December 13, 1984, the trial court made its order finding that William, still on active service with the Navy, was eligible to retire at the time of the hearing as a lieutenant, pay grade 0-3; and that on May 1, 1986, William would become eligible to retire as a lieutenant commander, at pay grade 0-4. The court gave Beryl this option: either (1) to receive her interest in William's pension effective December 1, 1984, as though he had retired then in pay grade 0-3; or (2) to wait until May 1, 1986, "the earliest date available to [William] for retirement in pay grade 0-4." Should Beryl elect to receive the pension effective December 1984, she "must forego any appreciation in the pension's value resulting from [William's] continued service," but can share in benefits such as automatic cost of living adjustments which would normally have accrued had William retired at time of the hearing. Further, the court found Beryl's half of the community share in the pension, based on the "time rule," to be 25.5 percent, or an amount, as at December 1984, of $344.51 monthly.

The court reserved jurisdiction over issues "involving any changes in the law or a mistake of fact relative to the Court's FINDING that if [William] were to retire as of this date, it would be as a Lieutenant (pay grade 0-3)."

---

\*Assigned by the Chairperson of the Judicial Council.

Beryl elected in writing to receive her share of the retirement benefit to which William would have been entitled had he retired at the date of the hearing.

William appealed from the portions of the court order which allowed a preretirement award of William's pension to Beryl; which ordered present payment to her; and which permitted her to share in automatic cost of living adjustments. Beryl appealed from the order's provisions that found William eligible for a pay grade 0-4 retirement on May 1, 1986; provided Beryl the option of taking the pension at December 1, 1984, at pay grade 0-3, or waiting until May 1, 1986; and ordered Beryl to exercise that option within 30 days.

After the taking of the appeals, Beryl, on April 16, 1985, noticed a motion for reconsideration, contending the court had erred in finding William's earliest eligibility to retire at 0-4 would occur on May 1, 1986, and that in fact he would be eligible to retire at the higher pay grade on May 1, 1985. Further, Beryl asked the court to modify her option to permit her to either take the pension at December 1, 1984, or to wait until May 1, 1985 (instead of 1986) and base her entitlement on the higher pension for which William would then be eligible. The trial court denied the request because it believed it had lost jurisdiction after the taking of the appeals.

William's contentions on appeal are as follows: (1) Because the judgment of dissolution here was final before the enactment of the Federal Uniformed Services Former Spouses Protection Act (10 U.S.C. § 1408, hereafter FUSFSPA, eff. Feb. 1, 1983), the trial court originally lacked jurisdiction over William's military retirement pay, which jurisdiction could not be conferred by William's consent to reservation of jurisdiction; (2) FUSFSPA may not constitutionally be applied retroactively to cases controlled by the decision in *McCarty* v. *McCarty* (1981) 453 U.S. 210 [69 L.Ed.2d 589, 101 S.Ct. 2728], because the separation of powers doctrine prevents Congress from overriding final judgments of the federal courts; (3) A military pension is reduced compensation for current services, not payment for past services, and as such must be characterized as separate property, if received post-separation (Civ. Code, § 5118); (4) A military pension cannot be divided before actual retirement because of the particular contingencies which could cause forfeiture of the pension, such as death, resignation, or dishonorable discharge; (5) Even assuming the propriety of dividing the pension under FUSFSPA, the trial court erred in awarding Beryl a portion of the "gross" entitlement, rather than the "net" pension after applicable deductions.

On the cross-appeal, Beryl contends as follows: (1) The value of William's retirement benefit at the time of the hearing should have been cal-

culated based on pay grade 0-4, the category in which William was actually serving at that time; (2) The trial court gave Beryl an option based on an erroneous finding of fact that William would be entitled to an 0-4 retirement on May 1, 1986, when instead he would be so entitled May 1, 1985; therefore, the trial court order should be modified to permit her to elect retirement benefits either at 0-3, effective December 1, 1984, or at 0-4, effective May 1, 1985; (3) Because at the time she made her election, Beryl was under a mistake of fact regarding the date William would be entitled to an 0-4 retirement, she should be permitted to withdraw her decision and make another election based on the true facts.

## DISCUSSION

California decisions have resolved all but one of William's arguments against him. ■ The language and the legislative history of FUSFSPA clearly show congressional intent "to abrogate all applications of the *McCarty* decision." (*Mueller* v. *Walker* (1985) 167 Cal.App.3d 600, 605 [213 Cal.Rptr. 442], citing J. Explanatory Statement of the Com. on Conf. on Pub.L. No. 97-252 from House Conf. Rep. No. 97-749, Aug. 16, 1982, 128 Cong. Rec. pp. 166-168 (1982); *In re Marriage of Buikema* (1983) 139 Cal.App.3d 689, 691 [188 Cal.Rptr. 856]; *In re Marriage of Ankenman* (1983) 142 Cal.App.3d 833, 837 [191 Cal.Rptr. 292]; 10 U.S.C. § 1408(c)(1) ["[A] court may treat disposable retired or retainer pay payable to a member for pay periods beginning after June 25, 1981, either as property solely of the member or as property of the member and his spouse in accordance with the law of the jurisdiction of such court."].) The reservation of jurisdiction over the issue is as valid in this context (see *In re Marriage of Chambers* (1985) 174 Cal.App.3d 1079, 1083 [220 Cal.Rptr. 504]) as it is generally to permit later modification of a property award. (*Mueller* v. *Walker, supra,* 167 Cal.App.3d at pp. 605-606, citing *In re Marriage of Brown* (1976) 15 Cal.3d 838 [126 Cal.Rptr. 633, 544 P.2d 561, 94 A.L.R.3d 164]; *In re Marriage of Fink* (1976) 54 Cal.App.3d 357 [126 Cal.Rptr. 626]; Civ. Code, § 4800, subd. (a).) "In every case in which jurisdiction over military retirement pay was reserved, California courts have awarded the former spouse a full retroactive share in the retirement payments received subject only to equitable considerations." (*In re Marriage of Chambers, supra,* at p. 1083.)

■ FUSFSPA's full retroactivity to the date of *McCarty* v. *McCarty, supra,* is likewise well established. "Starting with the last paragraph of the *McCarty* opinion itself, the judicial and legislative branches, state and federal, cooperated in a massive and largely successful drive to make *McCarty* disappear—prospectively, presently, and retroactively." (*Aloy* v. *Mash* (1985) 38 Cal.3d 413, 421 [212 Cal.Rptr. 162, 696 P.2d 656]; see, e.g.,

*Mueller* v. *Walker, supra,* 167 Cal.App.3d 600, applying Civ. Code, § 5124[1]; *In re Marriage of Thomas* (1984) 156 Cal.App.3d 631, 637 [203 Cal.Rptr. 58]; *In re Marriage of Ankenman, supra,* 142 Cal.App.3d at pp. 836-837; *In re Marriage of Hopkins* (1983) 142 Cal.App.3d 350, 353 [191 Cal.Rptr. 70]; *In re Marriage of Frederick* (1983) 141 Cal.App.3d 876, 879 [190 Cal.Rptr. 588]; *In re Marriage of Buikema, supra,* 139 Cal.App.3d at p. 691.)

As we pointed out in *In re Marriage of Buikema, supra,* FUSFSPA "over-rules *McCarty,* stating 'a court may treat disposable retired or retainer pay payable to a member for pay periods beginning after June 25, 1981, either as property solely of the member or as property of the member and his spouse in accordance with the law of the jurisdiction of such court.' (10 U.S.C. § 1408(c)(1).) California law treating military retirement pensions as community property is no longer preempted. The act's legislative history clearly indicates Congress' intent to abrogate all applications of the *McCarty* decision (see J. Explanatory Statement of the Com. of Conf. on Pub. L. No. 97-252 from House Conf. Rep. No. 97-749, Aug. 16, 1982, pp. 166-168, 128 Cong. Rec. (1982))." (*In re Marriage of Buikema, supra,* 139 Cal.App.3d at p. 691.)

■ The separation of powers argument clearly has no force here, because the decision in *McCarty* (finding federal law had impliedly preempted the characterization of military retirement pay) rested squarely on its interpretation of Congressional intent, which intent was quickly manifested to the contrary in FUSFSPA, 10 United States Code section 1408(c)(1), quoted above, directing each state to follow its own law in the characterization of military retirement pay, and thus recognizing the longstanding doctrine that family law matters are the special province of state courts. (See *Hisquierdo* v. *Hisquierdo* (1979) 439 U.S. 572, 581 [59 L.Ed.2d 1, 10-11, 99 S.Ct. 802]; *United States* v. *Yazell* (1966) 382 U.S. 341, 352 [15 L.Ed.2d 404, 410, 86 S.Ct. 500]; *Ex Parte Burrus* (1890) 136 U.S. 586, 593-594 [34 L.Ed. 500, 503, 10 S.Ct. 850].)

■ We pointed out in *In re Marriage of Thomas, supra,* 156 Cal.App.3d at page 636, that the type of preemption found to exist by the *McCarty* decision involved no direct congressional prohibition of states' exercise of

---

[1]Civil Code section 5124 permits application of FUSFSPA to cases which became final between the effective dates of *McCarty* and FUSFSPA. (See *Mueller* v. *Walker, supra,* 167 Cal.App.3d 600.) The combined result of (1) the nonapplicability of *McCarty* to pre-*McCarty* judgments, (2) Civil Code section 5124 applying FUSFSPA retroactively to judgments final after *McCarty* but before FUSFSPA, and (3) FUSFSPA's application to matters after its effective date, is the complete abrogation in this jurisdiction of any effect of *McCarty,* and the treatment of all military pensions as community assets divisible upon dissolution, like other pensions, regardless of date of dissolution or property division.

jurisdiction but only a perceived conflict between state and federal law. Accordingly, *McCarty* did not imply any withholding of subject matter jurisdiction, hence cases decided before *McCarty* were not void nor subject to collateral attack. We also pointed out in *Thomas* that "the subject of domestic relations belongs to the states." (*In re Marriage of Thomas, supra,* at p. 636, citing *Ex Parte Burrus, supra,* 136 U.S. at pp. 593-594 [34 L.Ed. 500, 503].) Accordingly, there is no merit in William's argument that the court here lacked subject matter jurisdiction, before *McCarty,* over his military pension, rendering void any stipulation to reservation of jurisdiction. As in the *Thomas* case, when the final divorce decree was entered here (on a date before the *McCarty* decision), "there was no express or implied statutory prohibition to this state exercising jurisdiction over community property divisions of military retirement pay . . . according to well-established California community property law." (*In re Marriage of Thomas, supra,* 156 Cal.App.3d at p. 637.) This court has also refused to apply *McCarty* retroactively to previously final judgments. (*In re Marriage of Sheldon* (1981) 124 Cal.App.3d 371 [177 Cal.Rptr. 380], app. dism. in *Sheldon* v. *Sheldon* (1982) 456 U.S. 941 [72 L.Ed.2d 462, 102 S.Ct. 2002] [appeal dismissed by the United States Supreme Court for want of a substantial federal question].)

■ Further, military retirement benefits are routinely characterized under California law as deferred compensation rather than present compensation, making California Civil Code section 5118 irrelevant. (See, e.g., *In re Marriage of Fithian* (1974) 10 Cal.3d 592, 604 [111 Cal.Rptr. 369, 517 P.2d 449]; *In re Marriage of Jacobson* (1984) 161 Cal.App.3d 465 [207 Cal.Rptr. 512]; *In re Marriage of Scott* (1984) 156 Cal.App.3d 251 [202 Cal.Rptr. 716].) ■ Similarly, the cases permit preretirement division of such pensions, as in the case of retirement benefits generally, which constitute community assets regardless of whether "vested" or "not vested," or subject to contingencies or not. *In re Marriage of Brown, supra,* 15 Cal.3d at page 842 established for pensions generally that such rights "whether or not vested, represent a property interest; to the extent that such rights derive from employment during coverture, they comprise a community asset subject to division in a dissolution proceeding." *In re Marriage of Gillmore* (1981) 29 Cal.3d 418, 428 [174 Cal.Rptr. 493, 629 P.2d 1] established the right of a nonemployee spouse to receive the present value of the community's share of a vested, mature pension interest at time of dissolution. These principles were applied to permit characterization, division, and award of community interests in military pensions ahead of actual retirement in *In re Marriage of Jacobson, supra,* and *In re Marriage of Scott, supra.*

William argues the published precedent does not address his specific point that military pensions are more "contingent" than other forms of retirement

because of the possibility of a court martial and dishonorable discharge cutting off pension rights, as well as the argued rule that approval of superior officers is a necessary prerequisite to retirement. First, the plethora of precedent now dividing military pensions on *Gillmore* principles, in advance of actual retirement, have implicitly rejected William's argument. Second, the legislative history of FUSFSPA also undercuts William's argument, because it is clear, from the testimony of service personnel arguing against the bill, that Congress was well aware that the bill would permit application of local law, including the doctrine of the *Gillmore* case, which was specifically cited to the Senate. (See Statement of Lt. Gen. Andrew P. Iosue, Sen. Rep. No. 97-502, 2d Sess., p. 56 (1982); 1982 U.S. Code Cong. & Admin. News, p. 1639.) The Congress nevertheless enacted FUSFSPA, permitting, as stated, full application of local law to issues of characterization and division of military retirement pay, limited only by those parts of the statute specifically restricting state power, as in matters of garnishment and exertion of jurisdiction over service persons. (See 10 U.S.C. §§ 1408(c)(4) regarding jurisdiction; 1408(d) and (e) concerning garnishment or direct payment to spouse.)

The only issue raised by William which has not yet been decided is the question whether FUSFSPA permits division of the "gross" military pension or whether its use of the term "disposable" retirement pay limits jurisdiction to the "net" benefit remaining after deductions (principally, income tax deductions). This issue is now before the California Supreme Court. (See vacated opns. in *In re Marriage of Harmon** (Cal.App.) L.A. 32130, *Casas* v. *Thompson*† (Cal.App.) L.A. 32131; petns. for review in both granted Nov. 27, 1985.)

The fairest way we see to handle this problem is to modify the judgment to provide for an award of net retirement to Beryl provided William sets aside Beryl's potential share in the difference between gross and disposable retirement pay in such manner as the parties shall agree or the court shall direct to preserve that sum for Beryl should the Supreme Court decide the issue in her favor.

### Cross-appeal

The arguments Beryl raises on her cross-appeal rest on a misconception of the *Gillmore* principles. The cases do not permit the nonemployee spouse to elect between (1) the present value of the retirement were husband

---

*On September 25, 1986, the cause was retransferred to the Court of Appeal, Fourth Appellate District, Division One, with directions. Subsequent opinion was not certified for publication.

†Reporter's Note: For Supreme Court opinion, see 42 Cal.3d 131.

to retire at time of trial or (2) the value of such retirement at some later time when husband becomes entitled, because of longer service, to a higher pension. The option afforded Beryl in the trial court reflects this misconception. ■ The true principle is that when an employed spouse with a vested and matured pension chooses not to retire, the nonemployed spouse may, if she chooses, elect to receive immediately her community interest in the benefit that would have been paid had the spouse actually retired at time of trial. Instead, she may choose to wait until his actual retirement, and share at that time in the retirement benefits, based on the community's interest in the plan calculated as of the date of the parties' separation. (See *In re Marriage of Gillmore, supra,* 29 Cal.3d 418; *In re Marriage of Jacobson, supra,* 161 Cal.App.3d at pp. 472-473, 475; *In re Marriage of Scott, supra,* 156 Cal.App.3d 251.) If the electing spouse chooses not to wait until actual retirement, she gives up her right to any future increases in the pension resulting from longevity of service, increased age, or higher salary. (*In re Marriage of Gillmore, supra,* at p. 428, fn. 9.) She does, however, preserve her right to increases such as cost of living adjustments, as the trial court here recognized. (See *In re Marriage of Jacobson, supra,* at p. 475; *In re Marriage of Scott, supra,* at p. 254.)

■ Thus, permitting Beryl to elect to base her entitlement on a higher pension amount due to William's increased length of service, long after the parties' separation and the time of trial, violates the rule of *Gillmore* that a spouse electing a preretirement payment foregoes later appreciation due to salary increases. The trial court could validly have permitted Beryl to postpone division of the pension until William's *actual* retirement, whether that occurred in 1985, 1986 or whenever, and if she made that election, she would then have been entitled to the community's share in that benefit, including interim increases in value. (She would also, in such a case, take the risk of nonpayment of the benefit, if William were to die or be dishonorably discharged before retiring.) Electing a present benefit, however, she must be limited to the amount which would have been payable at time of trial; no authority permits her to elect a benefit calculated on a hypothetical retirement at a future date.

The established facts here are that if William had retired in December 1984, the time of the hearing, he would have retired at pay grade 0-3. The trial court reserved jurisdiction to correct any mistakes of fact regarding that finding, but no changes in that fact are here alleged. Accordingly, the trial court did not err in establishing one prong of Beryl's option as a right to elect to receive her community share of an 0-3 retirement calculated at December 13, 1984. However, the court's alleged factual error as to when an 0-4 retirement would be permitted is irrelevant, because the second prong

of its order was erroneous. Beryl may not elect to wait until May of 1985 or 1986. The cases permit her to take now, or wait until William retires.

■ Further, the cases do not support Beryl's argument that because William was serving in pay grade 0-4 at the time of the hearing, the retirement calculation should be based on that amount. Again, the principle is to permit immediate award of the community's share in that pension to which the employed spouse would have been entitled had he retired at time of trial. Here, that is an 0-3 pension.

■ Since the trial court order under which Beryl was forced to make her election rested on a mistake of law, it would be inequitable to bind her to that election. She should be permitted to make her choice in light of the actual controlling principles. Accordingly, it will be necessary to remand this matter to permit the trial court to modify its order in accordance with the principles we have discussed.

#### DISPOSITION

The trial court shall modify its order in line with the principles we have discussed to (1) arrange to preserve for Beryl's benefit the difference between the net and gross amounts of William's retirement pay and (2) present Beryl with the option of either (a) immediate payment of her share in William's retirement pay based on a pension at grade 0-3 as of December 1984 or (b) deferred division of William's pension until the time he actually retires. Each party shall bear his or her own costs on this appeal.

Staniforth, Acting P. J., concurred.

**LEWIS, J.**—I respectfully dissent.

Recognizing that the critical issues here are already before the California Supreme Court and I have already expressed my views on most of them in some of those pending cases, I will here only briefly summarize the reasons for my inability to agree with the majority.

This judgment was final in 1979. It did not award Mrs. Castle any interest in the then nonvested pension. The parties stipulated the court could reserve jurisdiction over that issue, but of course subject matter jurisdiction cannot be conferred by stipulation if it does not exist. (*Taylor* v. *Taylor* (1923) 192 Cal. 71, 78 [218 P. 756, 51 A.L.R. 1074].) California courts thought they had jurisdiction; but as it turns out, they were wrong, and the people who had been arguing for years that the subject of military pensions was preempted from state court jurisdiction had been right all along. The United

States Supreme Court said so in *McCarty* v. *McCarty* (1981) 453 U.S. 210 [69 L.Ed.2d 589, 101 S.Ct. 2728]. The United States Supreme Court having told us what the federal statutes meant, the discussion as to that issue is over. Their word is final and the only one that counts. The current Congress was then free to enact new legislation with different meaning, but it had no power to change the court's decision as to the intention or effect of the acts of a previous Congress. That principle also seems fundamental. Our own court has set it out pretty clearly as to California law in *Honey Springs Homeowners Assn.* v. *Board of Supervisors* (1984) 157 Cal.App.3d 1122 [203 Cal.Rptr. 886] (with which I disagreed on other grounds): "[I]t is firmly established [that] statutory construction is a judicial function within which the 'courts have consistently held that "declaratory or defining statutes are to be upheld . . . as an exercise of the legislative power to enact a law for the future." [Citations.]' (*People* v. *Cuevas* (1980) 111 Cal.App.3d 189, 199 . . . .) In other words, '[t]he right to construe a preexisting statute belongs to the judiciary . . . .' [Citation.] Consequently, the Legislature "'may not revise the operation of an existing law in the form of an amendatory statute to affect past transactions.'" (*People* v. *Cuevas, supra,* . . . at p. 199, quoting *Cal. Emp. Stab. Com.* v. *Chichester etc. Co., supra,* 75 Cal.App.2d at p. 901.) . . . . As the court in *Del Costello* v. *State of California* (1982) 135 Cal.App.3d 887, 893, footnote 8 . . ., succinctly summarized, '[t]he Legislature has no authority to interpret a statute. That is a judicial task. . . .'" Whether Congress in enacting "FUSFSPA" intended to try to abrogate *McCarty* is irrelevant to the question of the pre-FUSFSPA jurisdiction of the California courts. It is simply beyond the power of Congress to change the meaning of the prior law once the Supreme Court has stated what the meaning was. All Congress had the power to do was enact a new law with a new meaning.

Neither FUSFSPA nor Civil Code section 5124 can give a court jurisdiction it did not have when it made its final judgment. This seems to be an unpopular point of view, but until the California Supreme Court directly decides this issue, those of us who see the emperor parading without clothes have to say so. (See for example, *In re Marriage of Cox* (1986) 178 Cal.App.3d 240 [223 Cal.Rptr. 655].)

If the issue of "gross" or "net" retirement pay is reached, other cases have questioned the "fairness" of Congress allowing what may be more favorable treatment to the service member. Congress certainly has the power to do so. If Congress had the power to preempt the whole, they certainly have the power to allow the states to exercise jurisdiction over slightly less than the whole. If it was not "unfair" to preempt state court jurisdiction over all military pensions, it is unclear why it is "unfair" to grant jurisdiction over the "net," especially since a greater "unfairness" will exist as

between service personnel and the pension benefits they will receive depending on the state in which they are divorced. Other rational reasons to give such a slight advantage to the service member may exist, not the least of which would be the fact the service member is the one who may be required to "go in harm's way" to earn the benefits.

Finally, if the majority has correctly decided the appeal, I agree with the disposition of the cross-appeal.

The petition of appellant Husband for review by the Supreme Court was denied July 30, 1986.