[No. A020953. First Dist., Div. One. Nov. 1, 1984.]

In re the Marriage of ALICE L. and DOUGLAS T. FAIRFULL.
ALICE L. FAIRFULL, Appellant, v.
DOUGLAS T. FAIRFULL, Respondent.

**COUNSEL**

David S. Maguire and Germino, Layne, Brodie, Runte, Maguire & MacKay for Appellant.

Max A. Creamer for Respondent.

**OPINION**

**ELKINGTON, J.**—Plaintiff Alice L. Fairfull (hereafter for convenience and clarity, Alice) appeals from an interlocutory decree of dissolution of

her marriage to Douglas T. Fairfull (hereafter for similar reasons, Douglas). By her appeal, Alice claims entitlement to a one-half community property interest in Douglas' military retirement benefits which were earned and accrued during their 19 years of marriage.

We thus become concerned with the Uniformed Services Former Spouses' Protection Act (see 10 U.S.C.A. §§ 1121-3000, pp. 158-159), hereafter the Act (which is codified as 10 U.S.C.A. § 1408). The Act provides that in a state such as California, where a marriage to the service member has endured more than 10 years, the nonmilitary spouse is entitled to his, or her, proportionate community share of such of the military spouse's retirement benefits, as had been earned and accrued during their marriage.

We relate the material factual-procedural context of the case.

For many years, under California law, a spouse had a community property interest in such retirement benefits as had been earned by, and accrued to, the other spouse as a result of his, or her, employment during the marriage. While such appeared to be the law, Alice, on December 10, 1980, commenced her action for dissolution of the parties' marriage. But thereafter, and *before* trial of the action, the nation's Supreme Court in *McCarty* v. *McCarty* (1981) 453 U.S. 210 [69 L.Ed.2d 589, 101 S.Ct. 2728], concluded that "military retired pay differs in some significant respects from a typical pension or retirement plan" (p. 221 [69 L.Ed.2d p. 599]). The court found an intent of Congress contrary to the purpose of California law, and that such a "decision . . . is for Congress alone" (p. 236 [69 L.Ed.2d p. 608]). California's law was impliedly overruled insofar as it applied to military pensions.

At the instant dissolution action's trial, Douglas claimed his military pension rights as his separate property, under the force of *McCarty* v. *McCarty.*

Following trial, the superior court, concluding that—"the military retirement is husband's separate property, *McCarty* v. *McCarty* (1981) 101 S.Ct. 2728"—entered judgment accordingly. Alice timely appealed from the judgment.

Thereafter, *pending the appeal,* Congress enacted the above-mentioned Act which, as here relevant, provides that:

"[A] court [such as this state's superior court] may treat disposable retired or retainer pay payable to a member for pay periods beginning after June 25, 1981, either as property solely of the member or as property of the

member and his spouse in accordance with the law of the jurisdiction of such court." (10 U.S.C.A. § 1408(c)(1).)

(It is held that the Act is applicable "to all cases not final as of [its] effective date, that is February 1, 1983." *In re Marriage of Hopkins* (1983) 142 Cal.App.3d 350, 360 [191 Cal.Rptr. 70].)

It will be noted that the Act (10 U.S.C.A. § 1408(c)(1)) states that it covers pension benefits "payable to a [retiree military] member for pay periods beginning *after* June 25, 1981." If that means that the Act covers only retirement benefits payable as a result of the military member's military pay periods and earnings "after June 25, 1981," Alice would be deprived of the greater part of what would otherwise be her community interest in such benefits, i.e., that accruing *prior* to June 25, 1981.

But it is now authoritatively held that the Act's "legislative history clearly indicates Congress' intent to abrogate all applications of the *McCarty* decision." (See *In re Marriage of Sarles* (1983) 143 Cal.App.3d 24, 27 [191 Cal.Rptr. 514]; *In re Marriage of Ankenman* (1983) 142 Cal.App.3d 833, 837 [191 Cal.Rptr. 292]; *In re Marriage of Buikema* (1983) 139 Cal.App.3d 689, 691 [188 Cal.Rptr. 856].) Thus, such military pension rights as are intended by Congress to be community property, will be divided " '*without regard to the date of any court order.*' " (*In re Marriage of Fransen* (1983) 142 Cal.App.3d 419, 428 [190 Cal.Rptr. 885]); the "legislative intent [is] that the law relative to community property treatment of military retirement pensions be as though *McCarty* did not exist" (*In re Marriage of Frederick* (1983) 141 Cal.App.3d 876, 879 [190 Cal.Rptr. 588]); "[t]he prior decisions of this state relative to the treatment of military pensions as community property . . . will be controlling on all cases not yet final, whether they were filed before, on or after June 26, 1981." (*In re Marriage of Hopkins, supra,* 142 Cal.App.3d 350, 360); and, "such pensions would be subject to division as community property both before and after June 25, 1981" (*In re Marriage of Frederick, supra,* 141 Cal.App.3d at p. 879).

We, accordingly, *also* hold that it is the law of this state that military pension rights, earned and accruing during marriage, are the community property of the spouses, without regard to whether such rights accrued before or after June 26, 1981.

■ We have considered (1) Douglas' contention on appeal (not made in the superior court) that the trial court lacked jurisdiction over his person because he was in fact a resident of Florida, and (2) his claimed "special appearance" before this court, moving for leave to produce additional evidence under rule 23(b), California Rules of Court, to establish that fact.

We have noted, initially, that the family home of the parties and their children, concerning which there was much dispute at the trial, was located in Santa Clara County, California.

And in Alice's action for dissolution of their marriage, Douglas made a *"general appearance,"* seeking favorable resolution of all of his property rights, separate and community including his military pension, the family residence, and other property. Such a general appearance "operates as a *consent to jurisdiction of the person."* (1 Witkin, Cal. Procedure (2d ed. 1970) Jurisdiction, § 122, pp. 651, 652, and see authority there collected.) We discern no "manifest injustice," as contended by Douglas, in holding him to his general appearance, and in denying his rule 23(b) motion to produce evidence, which we now do.

■ Nor is merit seen in Douglas' contention that Congress, in its passage of the Act, "did not abrogate the decision of the United States Supreme Court in *McCarty." McCarty's* ruling was based *entirely* upon an apparent, but mistaken, congressional intent. And, as noted, in its passage of the Act, the intent of Congress was that it operate retroactively as to retirement benefits earned and accruing "both before and after June 25, 1981." Whether a statute will so operate retroactively depends upon the manifested legislative, or congressional, intent. (*In re Marriage of Bouquet* (1976) 16 Cal.3d 583 [128 Cal.Rptr. 427, 546 P.2d 1371], *passim; Greene* v. *United States* (1964) 376 U.S. 149, 160 [11 L.Ed.2d 576, 584-585, 84 S.Ct. 615].)

Here the congressional intent was manifest. (See *In re Marriage of Sarles, supra,* 143 Cal.App.3d 24, 26; *In re Marriage of Ankenman, supra,* 142 Cal.App.3d 833, 837; *In re Marriage of Fransen, supra,* 142 Cal.App.3d 419, 428; *In re Marriage of Hopkins, supra,* 142 Cal.App.3d 350, 360; *In re Marriage of Frederick, supra,* 141 Cal.App.3d 876, 879.) And we otherwise find no contrary federal authority, or violation of due process, or equal protection of the laws, or the doctrine of separation of powers, by the Act's retroactive application.

Nor are we persuaded that the Act's above-quoted (c)(1) reference to "spouse" is inapplicable to Alice, now a "former spouse." A reading of the Act, and its congressionally designated title, Uniformed Services *Former Spouses'* Protection Act, makes crystal clear a purposeful application to "former spouses."

However, we recognize that under our holding, the parties' respective incomes and property rights, will, or may, be substantially changed. Either of the parties, if he or she shall so elect, will be permitted to seek reasonable modification or readjustment of the interlocutory or final judgment of dis-

solution, in respect of spousal and child support. We here make no suggestion as to what, if any, such modification, or readjustment, should occur.

The judgment, insofar as it declares Douglas' military pension to be his separate property is reversed. The superior court will take such further proceedings as are not inconsistent with the opinions we have expressed.

Racanelli, P. J., and Newsom, J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied January 16, 1985.