[Civ. No. 31374. Fourth Dist., Div. One. Apr. 30, 1985.]

EIKO MUELLER, Plaintiff and Appellant, v.
DONALD LEROY WALKER, Defendant and Respondent.

602

**COUNSEL**

Richard R. Ravreby and Ravreby & Connolly for Plaintiff and Appellant.

Joseph D. Schloss, Sr., for Defendant and Respondent.

## OPINION

**STANIFORTH, J.**—Eiko Mueller appeals a judgment of dismissal following an order sustaining, without leave to amend, a demurrer to a complaint for partition and declaratory relief. By the complaint, Eiko Mueller sought her community property interest in her former husband's (Donald Leroy Walker) military pension benefits. The military pension was previously awarded to Walker as his separate property in a divorce decree which became final in October 1982. The trial court held the prior decision to be res judicata, barring relitigation of the military pension issue.

## DISCUSSION

### I

The 16½-year marriage of Eiko Mueller (wife) and Donald Leroy Walker (husband) was dissolved by a final judgment on August 23, 1982, incorporating the provisions of an interlocutory judgment entered July 15, 1982. The parties were married in 1964. Husband was in the United States Marine Corps during the marriage. In the judgment of dissolution, husband was awarded, inter alia, the retirement benefits from his military pension as his "sole and separate property." The judgment also contained an "after-discovered property" provision which states:

"IT IS FURTHER ORDERED that in the event there is any after-discovered property that would have been community property or quasi-community property under the law applicable as of the date of separation of the parties hereto, the said property will be divided equally between the parties hereto, share and share alike; in the event said after-discovered property has been wilfully concealed by one of the parties hereto, then and in that event the concealing party will transfer or convey to the other party, at the other party's election,

". . . . . . . . . . . . . . . . . . . . .

"IT IS FURTHER ORDERED that the court reserves jurisdiction in this proceeding to dispose of any after-discovered property.

"IT IS FURTHER ORDERED that the herein order is not intended to impair the availability, in a court of competent jurisdiction, of any other remedy arising from the undisclosed ownership."

When the judgment of dissolution of marriage became final, the United States Supreme Court decision in *McCarty* v. *McCarty* (1981) 453 U.S. 210 [69 L.Ed.2d 589, 101 S.Ct. 2728], decided June 26, 1981, expressed the controlling law as to military retirement pay. *McCarty* held, upon dissolution of marriage, federal law precluded a state court from dividing military nondisability retired pay pursuant to state community property laws. The United States Congress quickly responded to the *McCarty* decision by enacting the Federal Uniformed Services Former Spouses' Protection Act (FUSFSPA). (10 U.S.C. § 1408.) FUSFSPA became effective February 1, 1983, and provides in part: "[A] court may treat disposable retired or retainer pay payable to a member for pay periods beginning after June 25, 1981, either as property solely of the member or as property of the member and his spouse in accordance with the law of the jurisdiction of such court." (10 U.S.C. § 1408(c)(1).)

■ This language, together with the legislative history of FUSFSPA, has been declared to be a clear indication by Congress " 'to abrogate all applications of the *McCarty* decision (see J. Explanatory Statement of the Com. on Conf. on Pub.L. No. 97-252 from House Conf. Rep. No. 97-749, Aug. 167, 1982, pp. 166-168, Cong. Rec., vol. 128 (1982)).' (*In re Marriage of Buikema* (1983) 139 Cal.App.3d 689, 691 . . .)." (*In re Marriage of Ankenman* (1983) 142 Cal.App.3d 833, 837 [191 Cal.Rptr. 292].) In addition, appellate court decisions have concluded Congress intended " '. . . the law relative to community property treatment of military retirement pensions be as though *McCarty* did not exist, i.e., that such pensions would be subject to division as community property before and after June 25, 1981.' (*In re Marriage of Frederick* (1983) 141 Cal.App.3d 876, 879 . . . .)" (*In re Marriage of Ankenman, supra,* at p. 837.)

Despite the intention FUSFSPA be applied retroactively in order to abrogate all applications of the *McCarty* decision, FUSFSPA has been held applicable only to those cases not yet final as of its effective date, i.e., February 1, 1983. (See *In re Marriage of Hopkins* (1983) 142 Cal.App.3d 350, 356-360 [191 Cal.Rptr. 70]; *In re Marriage of Fairfull* (1984) 161 Cal.App.3d 532, 535 [207 Cal.Rptr. 523].) ■ Here, the judgment dissolving the parties' marriage became final before the effective date of FUSFSPA. Consequently, FUSFSPA does not have retroactive application to allow reopening of a final judgment. Based upon these cases, husband argues res judicata bars wife's action for partition and declaratory relief.

■ It is true as a general principle of law after the trial court has divided the property, and the judgment has become final, the court loses jurisdiction to modify or alter the division made. (*Bodle* v. *Bodle* (1978) 76 Cal.App.3d 758 [143 Cal.Rptr. 115].) An exception to this general rule, however, arises

in cases where the court expressly reserves jurisdiction to modify a property award. (*In re Marriage of Brown* (1976) 15 Cal.3d 838 [126 Cal.Rptr. 633, 544 P.2d 561, 94 A.L.R.3d 164]; *In re Marriage of Fink* (1976) 54 Cal.App.3d 357 [126 Cal.Rptr. 626]; see also Civ. Code, § 4800, subd. (a).) ■ Wife unmeritoriously argues the "after-discovered property" provision of the judgment is applicable to husband's military pension because she acquired a community property interest in the pension after the judgment was entered by virtue of the enactment of FUSFSPA. No authority has been tendered or found to support the theory that an after-discovered property provision may be invoked in order to assert an "after-acquired *interest*" in property which was specifically mentioned and disposed of in the final judgment of dissolution. There is authority to the contrary. (See e.g., *Henn* v. *Henn* (1980) 26 Cal.3d 323, 330 [161 Cal.Rptr. 502, 605 P.2d 10].)

## II

■ Due to the application of res judicata principles, the *McCarty* decision continued to state the controlling law as to those judgment decrees which became final during the 18-month hiatus created by the enactment of FUSFSPA.

To bridge the hiatus, the California Legislature enacted Civil Code section 5124 (eff. Jan. 1, 1984) permitting modification of a community property settlement, judgment or decree which became final on or after June 25, 1981, and before February 1, 1983—the 18-month hiatus period—to include a division of military retirement benefits.[1] Modification is authorized regardless whether the settlement, judgment or decree reserved jurisdiction over the pension or treated the pension as other than community property.

---

[1]Civil Code section 5124 provides: "(a) Community property settlements, judgments, or decrees that became final on or after June 25, 1981, and before February 1, 1983, may be modified to include a division of military retirement benefits payable on or after February 1, 1983, in a manner consistent with federal law and the law of this state as it existed before June 26, 1981, and as it has existed since February 1, 1983.

"(b) Modification of community property settlements, judgments, or decree under this section may be granted whether or not the property settlement, judgment, or decree expressly reserved the pension issue for further determination, omitted any reference to a military pension, or assumed in any manner, implicitly or otherwise, that a pension divisible as community property before June 25, 1981, and on or after February 1, 1983, was not, as of the date the property settlement, judgment, or decree became final, divisible community property.

"(c) Any proceeding brought pursuant to this section shall be brought before January 1, 1986.

"(d) This section shall remain in effect only until January 1, 1986, and on that date is repealed unless a later enacted statute which is chaptered before that date deletes or extends that date."

Thus, by positive act the Legislature has superseded and modified the preclusive effect of the doctrine of res judicata or collateral estoppel as applied to military retirement benefits in decrees or judgments or settlements which became final in the specified time frame. Civil Code section 5124 in most clear and explicit language authorizes the remedy sought here by wife.[2]

### III

■ It is argued Civil Code section 5124 violates due process; it authorizes a taking of property without due process if applied, as it expressly provides, to judgments which became final before February 1, 1983, and which did not reserve jurisdiction over the military pension.

■ Absent an indication of any purpose upon the part of the state authority (whether legislative or judicial) to evade some prior decision of the United States Supreme Court or federal Congress, the principles of finality protecting the parties to this litigation (res judicata or collateral estoppel) are, within the broad limits of fundamental fairness, solely the concern of state law. (*Konigsberg* v. *State Bar* (1961) 366 U.S. 36, 44 [6 L.Ed.2d 105, 112, 81 S.Ct. 997, 1003].) "The rule of *res adjudicata* is to prevent vexatious litigation." (*Miller & Lux Inc.* v. *James* (1919) 180 Cal. 38, 44 [179 P. 174].) It is for the public good that there be an end to litigation. (*Williams* v. *Krumsiek* (1955) 131 Cal.App.2d 411 [280 P.2d 486].)

■ If it be assumed arguendo there is a "taking" by the legislative negation of the finality of a judgment, such taking may be constitutional where public policy and fairness considerations are great. Thus, the Legislature may modify the doctrine of res judicata, allow relitigation, for reasonable public policy grounds or other "rational bas[e]s." (*Deas* v. *Knapp* (1981) 29 Cal.3d 69, 79 [171 Cal.Rptr. 823, 623 P.2d 775]; *Stuart* v. *Department of Real Estate* (1983) 148 Cal.App.3d 1, 5 [195 Cal.Rptr. 524].)

The leading and dispositive case on this constitutional issue is *In re Marriage of Bouquet* (1976) 16 Cal.3d 583 [128 Cal.Rptr. 427, 546 P.2d 1371], where the 1972 amendment to Civil Code section 5118 making postseparation earnings separate property was held retroactive. In *Bouquet*, the parties agreed "that amended section 5118 can be applied retroactively if such

---

[2]Husband asserts Civil Code section 5124 is inapplicable since it became effective *January 1, 1984, after* the order sustaining demurrer and dismissal here. Wife, however, seeks reversal with authority to file an amendment to include seeking relief under this section.

a retroactive application is necessary to subserve a sufficiently important state interest. [Citations.]" (*Id.*, at p. 593.)

In face of the argument of an unconstitutional "taking" of property, the Supreme Court reasoned: "The application of the quasi-community property legislation to property acquired before its effective date clearly impaired the husband's vested property rights; prior to the enactment of the legislation he had been the sole owner of certain property and afterwards the property belonged to the community. Nevertheless, we deemed the retroactive application of the legislation a proper exercise of the police power. The state's paramount interest in the equitable distribution of marital property upon dissolution of the marriage, we concluded, justified the impairment of the husband's vested property rights. (See generally *Williams* v. *North Carolina* (1942) 317 U.S. 287, 298 . . . .)" (*In re Marriage of Bouquet, supra,* 16 Cal.3d 583, 593; fn. omitted.) and: "Retroactive legislation, though frequently disfavored, is not absolutely proscribed. The vesting of property rights, consequently, does not render them immutable: ' "Vested rights, of course, may be impaired 'with due process of law' under many circumstances. The state's inherent sovereign power includes the so-called 'police power' right to interfere with vested property rights whenever reasonably necessary to the protection of the health, safety, morals, and general well being of the people. . . . The constitutional question, on principle, therefore, would seem to be, not whether a vested right is impaired by a marital property law change, but whether such a change reasonably could be believed to be sufficiently necessary to the public welfare as to justify the impairment'. " (*Addison* v. *Addison, supra,* 62 Cal.2d at p. 566 . . ., quoting Armstrong, *'Prospective' Application of Changes in Community Property Control—Rule of Property or Constitutional Necessity?* (1945) 33 Cal.L.Rev. 476, 495.)" (*Id.*, at p. 592, fn. omitted.)[3]

In determining whether Civil Code section 5124 contravenes the due process clause, we must consider inter alia the significance of the state interest served and the importance of retroactive application to effectuate that interest. (See generally Reppy, *Retroactivity of the 1975 California Community Property Reforms* (1975) 48 So.Cal.L.Rev. 977, 1048-1049; Note, *Retroactive Application of California's Community Property Statutes* (1966) 18 Stan.L.Rev. 514, 518, 519, 521, 522.)

---

[3]Persuasive decisions from other jurisdictions have invoked the powers of equity to reopen final divorce decrees entered during the 18-month interim between *McCarty* and FUSFSPA. One court in particular concluded: "To do otherwise would be to carve out a category of people whose cases happened to be decided between June 25, 1981 and September 8, 1982 and deprive them of substantial property interests which all other similarly-situated litigants have been awarded." (*Smith* v. *Smith* (Del.Fam.Ct. 1983) 458 A.2d 711, 715; see also *Castiglioni* v. *Castiglioni* (1984) 192 N.J. Super. 594 [471 A.2d 809, 811].)

We conclude the language of this section as well as its legislative history[4] leave no doubt that any property divisions made in reliance upon the *McCarty* decision which became final before the effective date of FUSFSPA are susceptible to redivision as community property so long as action is taken before the scheduled repeal date. This law is a clear expression of legislative intent that recovery of a community property interest in a military pension benefit should not be barred simply because the case by chance falls into the 18-month gap between the effective dates of FUSFSPA and the *McCarty* decision. Section 5124 contemplates persons such as wife here should be entitled to the same protections as those persons whose judgments of dissolution did not become final during that same period.

Here, no subtle balance is required for the legislative intent is patent, clear, explicit, and the state's "paramount interest" in the equitable distribution of marital property upon dissolution of the marriage points to section 5124 as proper exercise of the police power. Finally, such a curative type of legislation supplements and carries into effect the congressional intent of FUSFSPA (10 U.S.C. § 1408(a)(2)) to "abrogate all applications of the *McCarty* decision." We hold that section 5124 authorizes the modification of the final judgment here to include a division of military retirement benefits. To this end the wife's pleadings may be amended to state a claim for relief under Civil Code section 5124.

Judgment reversed.

Brown (Gerald), P. J., and Lewis, J., concurred.

---

[4]"SB 1034, as amended [May 24, 1983], Petris. Community property. [¶] Under California case law prior to a June 25, 1981 decision of the United States Supreme Court, military retirement benefits were considered to be community property. The United States Supreme Court held that military retirement benefits were not divisible in a dissolution proceeding as community property. However, Congress subsequently enacted a law, effective February 1, 1983, providing that the states may treat these military retirement benefits as community property. [¶] This bill would authorize the modification of community property settlements, *judgments, or decrees* that became final on or after June 25, 1981, and before February 1, 1983, to include a division of military *retirement* benefits *payable on or after February 1, 1983,* as community property. [¶] Vote: majority. Appropriation: no. Fiscal committee: no. State-mandated local program: no." (Leg. Counsel's Dig.)