179 Cal.App.3d 73 (1986)
224 Cal. Rptr. 312
In re the Marriage of BETTY L. and JAMES A. POTTER.
BETTY L. ABSHIRE, Appellant,
v.
JAMES A. POTTER, Respondent.
Docket No. F004298.
Court of Appeals of California, Fifth District.
March 25, 1986.
*76 COUNSEL
Neil A. Helding for Appellant.
Julienne L. Rynda and Douglas B. Cone for Respondent.
OPINION
BEST, J.
Respondent (husband) commenced service with the United States Navy in July 1953 and married appellant (wife) on April 7, 1961. *77 Husband retired on February 1, 1978, with 25 years total military service, 17 years of which were completed while the parties were married. The parties separated on April 28, 1981, and wife filed a petition for dissolution of the marriage on April 29, 1981.
The United States Supreme Court decision in McCarty v. McCarty (1981) 453 U.S. 210 [69 L.Ed.2d 589, 101 S.Ct. 2728] was filed on June 26, 1981.
A stipulated interlocutory judgment was entered on November 16, 1981, providing, among other things: "The U.S. Navy Retirement benefits presently received by [husband] is confirmed to him as his separate property." Also contained in the interlocutory judgment was a waiver by each party of his and her rights to appeal or to ask for a new trial in the matter. A final judgment of dissolution of the marriage was entered on November 24, 1981.
Congress enacted the Uniform Services Former Spouses' Protection Act on September 8, 1982, to take effect on February 1, 1983. (Pub.L. No. 97-252, tit. X.)
The California Legislature enacted Civil Code[1] section 5124 in 1983 (Stats. 1983, ch. 775, § 1, p. 4255), to be effective January 1, 1984, and repealed on January 1, 1986.
On December 5, 1983, wife filed an order to show cause for modification seeking a community property determination and division of the military retirement benefits pursuant to section 5124. At a hearing held on March 29, 1984, the parties stipulated that the community property interest sought by wife amounted to 34 percent of the military retirement net income of $1,867 per month. On May 31, 1984, the trial court rendered its decision denying wife's motion and declaring section 5124 unconstitutional in that it was "an ex post facto impairment of contract and on the further basis of the doctrine of res judicata."

DISCUSSION

Did the trial court err in ruling section 5124 unconstitutional?

A. Procedural history.

Prior to the United States Supreme Court decision of McCarty v. McCarty, supra, 453 U.S. 210, California community property law had established that federal military retirement pay was divisible community property *78 to the extent it was earned during the marriage. (Henn v. Henn (1980) 26 Cal.3d 323, 328 [161 Cal. Rptr. 502, 605 P.2d 10].) On June 26, 1981, the court in McCarty held that federal law prohibits division of military pensions and preempts state community property law. (McCarty v. McCarty, supra, at pp. 223-236 [69 L.Ed.2d at pp. 600-608].)
On April 29, 1981, wife filed a petition for dissolution of marriage, listing the U.S. Navy retirement as a community asset. Husband filed a response on May 13, 1981 (a month prior to the McCarty decision), listing the U.S. Navy retirement benefits as community property for postmarriage service time and as separate property for premarriage service time. Husband filed an amended response on September 24, 1981 (post-McCarty), listing the U.S. Navy retirement benefits as entirely his separate property.
On October 29, 1981, husband and wife stipulated in open court that the military retirement benefits were confirmed to husband as his separate property. A final judgment of dissolution of marriage was entered on November 24, 1981.
(1a) When the judgment of dissolution of marriage became final, the McCarty decision expressed the controlling law as to military retirement pay. The United States Congress, however, quickly responded to the McCarty decision by enacting the Federal Uniform Services Former Spouses' Protection Act (FUSFSPA) on September 8, 1982. (10 U.S.C. § 1408.) FUSFSPA became effective February 1, 1983, and provides: "Subject to the limitations of this section, a court may treat disposable retired or retainer pay payable to a member for pay periods beginning after June 25, 1981 either as property solely of the member or as property of the member and his spouse in accordance with the law of the jurisdiction of such court."
FUSFSPA has been held to overrule McCarty. (Brunson v. Brunson (1985) 168 Cal. App.3d 786, 787 [214 Cal. Rptr. 378].) "The act's legislative history clearly indicates Congress' intent to abrogate all applications of the McCarty decision [citation]." (In re Marriage of Buikema (1983) 139 Cal. App.3d 689, 691 [188 Cal. Rptr. 856].)
"Although effective February 1, 1983, and containing certain provisions which were not operative until that date, the use of the date McCarty was decided as a reference in 10 United States Code section 1408(c)(1) ... evidences a legislative intent that the law relative to community property treatment of military retirement pensions be as though McCarty did not exist, i.e., that such pensions would be subject to division as community property both before and after June 25, 1981." (In re Marriage of Frederick (1983) 141 Cal. App.3d 876, 879 [190 Cal. Rptr. 588], fns. omitted.)
*79 In Aloy v. Mash (1985) 38 Cal.3d 413, 421 [212 Cal. Rptr. 162, 696 P.2d 656], the California Supreme Court stated: "[N]o case within our memory has received less retroactive application than McCarty. Starting with the last paragraph of the McCarty opinion itself, the judicial and legislative branches, state and federal, cooperated in a massive and largely successful drive to make McCarty disappear  prospectively, presently and retroactively."
Even though the intention FUSFSPA be applied retroactively in order to abrogate all application of the McCarty decision is clear, FUSFSPA has been held applicable only to those cases not yet final as of its effective date of February 1, 1983. (See In re Marriage of Hopkins (1983) 142 Cal. App.3d 350, 356-360 [191 Cal. Rptr. 70]; In re Marriage of Fairfull (1984) 161 Cal. App.3d 532, 535 [207 Cal. Rptr. 523].) (2a) In the instant case, the judgment dissolving the parties' marriage became final before the effective date of FUSFSPA. Thus, FUSFSPA, standing alone, does not have retroactive application to allow reopening of the final judgment.
(3) In general, the trial court loses jurisdiction to modify or alter the division of property after the judgment has become final. (Bodle v. Bodle (1978) 76 Cal. App.3d 758 [143 Cal. Rptr. 115].) (2b) There is an exception to this general rule, however, in cases where the court expressly reserved jurisdiction to modify a property award. (In re Marriage of Brown (1976) 15 Cal.3d 838, 851 [126 Cal. Rptr. 633, 544 P.2d 561, 94 A.L.R.3d 164]; see also § 4800, subd. (a).) Here, there was no reservation of jurisdiction.
(4) However, in the similar case of Mueller v. Walker (1985) 167 Cal. App.3d 600, 606-607 [213 Cal. Rptr. 442], the court stated: "Due to the application of res judicata principles, the McCarty decision continued to state the controlling law as to those judgment decrees which became final during the 18-month hiatus created by the enactment of FUSFSPA.
"To bridge the hiatus, the California Legislature enacted Civil Code section 5124 (eff. Jan. 1, 1984) permitting modification of a community property settlement, judgment or decree which became final on or after June 25, 1981, and before February 1, 1983  the 18-month hiatus period  to include a division of military retirement benefits. Modification is authorized regardless whether the settlement, judgment or decree reserved jurisdiction over the pension or treated the pension as other than community property. Thus, by positive act the Legislature has superseded and modified the preclusive effect of the doctrine of res judicata or collateral estoppel as applied to military retirement benefits in decrees or judgments or settlements which became final in the specified time frame. Civil Code section 5124 in most *80 clear and explicit language authorizes the remedy sought here by wife." (Fns. omitted.)

B. Does section 5124 interfere with vested property rights in violation of the due process provisions of the state and federal Constitutions?

Husband argues that section 5124[2] violates due process, since it authorizes a taking of property without due process when applied to judgments which became final before February 1, 1983, and which did not reserve jurisdiction over the military pension. Our Supreme Court has long held that the retroactive application of a statute may be unconstitutional if it is an ex post facto law, if it deprives a person of a vested right without due process of law, or if it impairs the obligation of a contract. (In re Marriage of Buol (1985) 39 Cal.3d 751, 756 [218 Cal. Rptr. 31, 705 P.2d 354].)
(5), (6) In In re Marriage of Buol, supra, the California Supreme Court recently reaffirmed the rules governing retroactive application of statutes and the factors to be considered as stated in In re Marriage of Bouquet (1976) 16 Cal.3d 583 [128 Cal. Rptr. 427, 546 P.2d 1371] as follows: "Vested rights are not immutable; the state, exercising its police power may impair such rights when considered reasonably necessary to protect the health, safety, morals and general welfare of the people. (Bouquet, supra, 16 Cal.3d at p. 592.) In determining whether a given provision contravenes the due process clause we look to `the significance of the state interest served by the law, the importance of the retroactive application of the law to the effectuation of that interest, the extent of reliance upon the former law, the legitimacy of that reliance, the extent of actions taken on the basis of that reliance, and the extent to which the retroactive application of the new law would disrupt those actions.' (Ibid.) [¶] Where `retroactive application *81 is necessary to subserve a sufficiently important state interest' (Bouquet, supra, 16 Cal.3d at p. 593), the inquiry need proceed no further. [Citation.] In Bouquet, where we validated retroactive application of an amendment to Civil Code section 5118 making the postseparation earnings of both spouses, not just those of the wife, separate property, we emphasized that `[t]he state's interest in the equitable dissolution of the marital relationship supports this use of the police power to abrogate rights in marital property that derived from the patently unfair former law.' (Bouquet, supra, 16 Cal.3d at p. 594.) As noted in Bouquet, we reached the same conclusion in Addison [v. Addison (1965)] 62 Cal.2d 558, wherein we upheld the constitutionality of retroactive application of quasi-community property legislation despite its interference with the husband's vested property rights.
"In both Bouquet and Addison we identified an important state interest in the `equitable dissolution of the marital relationship' and stressed that retroactive application was necessary to remedy `the rank injustice of the former law.' (Bouquet, supra, 16 Cal.3d at p. 594; Addison, supra, 62 Cal.2d at p. 567.)
"Thus, these cases support the proposition that the state's paramount interest in the equitable dissolution of the marital partnership justifies legislative action abrogating rights in marital property where those rights derive from manifestly unfair laws." (In re Marriage of Buol, supra, 39 Cal.3d 751, 760-761.)
In Mueller v. Walker, supra, the court relied on In re Marriage of Bouquet, supra, to hold that section 5124 does not violate the due process clause, stating as follows: "We conclude the language of this section as well as its legislative history leave no doubt that any property divisions made in reliance upon the McCarty decision which became final before the effective date of FUSFSPA are susceptible to redivision as community property so long as action is taken before the scheduled repeal date. This law is a clear expression of legislative intent that recovery of a community property interest in a military pension benefit should not be barred simply because the case by chance falls into the 18-month gap between the effective dates of FUSFSPA and the McCarty decision. Section 5124 contemplates persons such as wife here should be entitled to the same protections as those persons whose judgments of dissolution did not become final during that same period.
"Here, no subtle balance is required for the legislative intent is patent, clear, explicit, and the state's `paramount interest' in the equitable distribution of marital property upon dissolution of the marriage points to section *82 5124 as proper exercise of the police power. Finally, such a curative type of legislation supplements and carries into effect the Congressional intent of FUSFSPA (10 U.S.C. § 1408(a)(2)) to `abrogate all applications of the McCarty decision.' We hold that section 5124 authorizes the modification of the final judgment here to include a division of military retirement benefits. To this end the wife's pleadings may be amended to state a claim for relief under Civil Code section 5124." (Mueller v. Walker, supra, 167 Cal. App.3d at p. 609, fn. omitted.)
Given the California Supreme Court's Addison and Bouquet decisions, we agree with the Mueller court's disposition of the res judicata and due process concerns presented by section 5124. Husband contends that a distinction should be drawn between cases such as his  where the husband is already receiving payments  and cases where payments were not being made prior to February 1, 1983, the effective date of FUSFSPA, or at the time of the agreement, judgment or decree. Husband, however, provides no authority or any reasons why such a distinction should be drawn.

C. Is section 5124 unconstitutional because it impairs the obligation of contracts?

(1b) Husband next contends that section 5124 unconstitutionally impairs contractual obligations. Here, husband and wife entered into a stipulation which was recited orally in open court and later reduced to writing in an interlocutory judgment of dissolution of marriage. Husband contends that this agreement between the parties is a valid contract and, as such, comes within the purview of the constitutional prohibitions against the impairment of contractual obligations.
(7) The rules governing the constitutionality of legislation which impairs contractual obligations were recently stated by the California Supreme Court in City of Torrance v. Workers' Comp. Appeals Bd. (1982) 32 Cal.3d 371 [185 Cal. Rptr. 645, 650 P.2d 1162].
"The language of these clauses `appears unambiguously absolute....' (Allied Structural Steel Co. v. Spannaus (1978) 438 U.S. 234, 240....) `No State shall ... pass any ... law impairing the obligation of contracts....' (U.S. Const., art. I, § 10.) `A ... law impairing the obligation of contracts may not be passed.' (Cal. Const., art. I, § 9.) Read literally, these provisions appear to proscribe any impairment. However, it has long been settled that the proscription is `not an absolute one and is not to be read with literal exactness like a mathematical formula.' (Home Bldg. & L. Assn. v. Blaisdell (1934) 290 U.S. 398, 428....)
*83 "As the United States Supreme Court recently stated, `it is to be accepted as a commonplace that the Contract Clause does not operate to obliterate the police power of the States. "It is the settled law of this court that the interdiction of statutes impairing the obligation of contracts does not prevent the State from exercising such powers as are vested in it for the promotion of the common weal, or are necessary for the general good of the public, though contracts previously entered into between individuals may thereby be affected...." [Citation.] As Mr. Justice Holmes succinctly [stated] ... "One whose rights, such as they are, are subject to state restriction, cannot remove them from the power of the State by making a contract about them. The contract will carry with it the infirmity of the subject matter."' (Allied Structural Steel, supra, 438 U.S. at pp. 241-242....)
"Thus, a finding that the state in the exercise of its police power has abridged an existing contractual relationship does not in and of itself establish a violation of the contract clause. It is the beginning, not the end of the analysis. A finding of impairment merely moves the inquiry to the next and more difficult question  whether that impairment exceeds constitutional bounds." (Id., at pp. 376-377.)
(8) The factors to consider in determining whether the impairment of a contract exceeds constitutional bounds were stated in Donlan v. Weaver (1981) 118 Cal. App.3d 675, 682-683 [173 Cal. Rptr. 566].
"The appropriate inquiry is whether the alteration of contractual rights and obligations effected [sic] by the statute, the impairment, is `sufficiently necessary to the public welfare as to justify the impairment.' [Citations.]
"Probably the single most important factor to be considered in determining whether a particular impairment is constitutionally permissible is the nature and extent of the impairment. `The severity of the impairment measures the height of the hurdle the state legislation must clear.' [Citations.] Other important factors to be considered are the nature, importance and urgency of the interest to be served by the challenged legislation; and whether the legislation was appropriately tailored and limited to the situation necessitating its enactment. [Citations.]"
(1c) Having concluded that section 5124 does not violate the due process clause, by parity of reasoning we also hold that section 5124 does not violate the contract clause.
As stated in Donlan: "[T]he criteria for determining whether the impairment of a vested property interest by legislation enacted under the police power violates substantive due process are essentially the same as those *84 considered in determining whether state legislation impairing contract rights violates the constitutional prohibitions against impairment of contracts. (San Diego White Truck Co. v. Swift (1979) 96 Cal. App.3d 88, 93....)" (Donlan v. Weaver, supra, 118 Cal. App.3d 675, 684.)
The "paramount interest" of this state in the equitable distribution of marital property upon dissolution of marriage, as affirmed by our Supreme Court in In re Marriage of Buol, supra, 39 Cal.3d 751, 760-761, clearly outweighs the interference with husband's rights under the contract. Section 5124 was appropriately tailored and limited to the situation necessitating its enactment. It was enacted so that the recovery of a community property interest in a military pension benefit would not be barred simply because the case by chance falls into the 18-month gap between the effective dates of FUSFSPA and the McCarty decision. The act became effective January 1, 1984, and was repealed by its own terms on January 1, 1986. Thus, it appears clear that section 5124 is a proper exercise of the police power, and the statute does not unconstitutionally impair the obligation of contracts.

D. Is section 5124 preempted by federal law?

(9) Husband contends that since FUSFSPA contains a retroactivity provision and "Civil Code section 5124 attempts to override the limited retroactivity of the federal acts, ... [t]he federal act pre-empts the state Legislature in this area." Not so.
It is true that FUSFSPA was made retroactive to the date of the McCarty decision; however, section 5124 does not attempt to override the limited retroactivity of the federal act or expand on it. While section 5124 refers to FUSFSPA, the clear intent and effect of section 5124 is to provide a procedure by which community property settlements, judgments, or decrees may be reopened even though the judgments, decrees or settlements have become final.

E. Is section 5124 an unconstitutional encroachment on judicial power?

Husband contends that section 5124, as it applies to judgments which are final, is an unconstitutional usurpation of judicial power by the Legislature in violation of the California Constitution, article III, section 3. Husband, however, provides no citation to case law or any discussion of the issue to support his contention. Our independent research has disclosed no cases which have discussed the same or similar issue. We reject husband's contention for these reasons.
Husband further contends that section 5124 is an interpretation of the retroactivity of a prior law (FUSFSPA) and, as such, is an exercise of *85 judicial power in violation of the doctrine of separation of powers. An examination of section 5124 reveals that husband's contention is without merit. There appears nothing in this section which would indicate that it is an interpretation of the retroactivity of FUSFSPA.
The order appealed from is reversed and the cause is remanded for further proceedings consistent with this opinion. Wife to have her costs on appeal.
Hanson (P.D.), Acting P.J., and Martin, J., concurred.
Respondent's petition for review by the Supreme Court was denied July 9, 1986.
NOTES
[1] All statutory references are to the Civil Code unless otherwise noted.
[2] Section 5124 provided at all pertinent times:

"(a) Community property settlements, judgments, or decrees that became final on or after June 25, 1981, and before February 1, 1983, may be modified to include a division of military retirement benefits payable on or after February 1, 1983, in a manner consistent with federal law and the law of this state as it existed before June 26, 1981, and as it has existed since February 1, 1983.
"(b) Modification of community property settlements, judgments, or decrees under this section may be granted whether or not the property settlement, judgment, or decree expressly reserved the pension issue for further determination, omitted any reference to a military pension, or assumed in any manner, implicitly or otherwise, that a pension divisible as community property before June 25, 1981, and on or after February 1, 1983, was not, as of the date the property settlement, judgment, or decree became final, divisible community property.
"(c) Any proceeding brought pursuant to this section shall be brought before January 1, 1986.
"(d) This section shall remain in effect only until January 1, 1986, and on that date is repealed unless a later enacted statute which is chaptered before that date deletes or extends that date."