[No. A029143. First Dist., Div. Four. July 1, 1986.]

In re the Marriage of DAWN and JAMES F. McDONOUGH.
DAWN McDONOUGH, Appellant, v.
JAMES F. McDONOUGH, Respondent.

46

**COUNSEL**

Mathew H. Powell for Appellant.

J. Michael Hogan, Reith, Bebermeyer & Wieben and John S. Wieben for Respondent.

**OPINION**

**SABRAW, J.**—In this case, we conclude that former Civil Code section 5124, enacted by our Legislature in order to permit the retroactive application of the Federal Uniformed Services Former Spouses Protection Act (FUSFS-PA; 10 U.S.C. § 1408), was constitutional.[1]

Dawn McDonough (wife) appeals from a postjudgment order denying her motion to reopen a judgment of dissolution in order to divide the nondisability military retirement benefits accrued by her former husband, James F. McDonough (husband), an officer in the United States Army, during their marriage. We reverse, holding that the trial court had the authority to grant

---

[1]Civil Code section 5124 has been repealed, *see* footnote 3, *post.*

wife's motion and divide husband's military retirement benefits as community property.

## I. The Historical Background

For a number of years prior to 1981, California courts treated nondisability military retirement benefits as community property based on *In re Marriage of Fithian* (1974) 10 Cal.3d 592 [111 Cal.Rptr. 369, 517 P.2d 449] and *In re Marriage of Brown* (1976) 15 Cal.3d 838 [126 Cal.Rptr. 633, 544 P.2d 561, 94 A.L.R.3d 164]. On June 26, 1981, the United States Supreme Court declared that rule contrary to federal law and held in *McCarty* v. *McCarty* (1981) 453 U.S. 210 [69 L.Ed.2d 589, 101 S.Ct. 2728] that such military retirement benefits belonged exclusively to the military spouse and could not be treated as community property under state law. The public outcry which followed led Congress to enact FUSFSPA. The new act permitted the states to characterize military pension benefits either as property of both spouses or as the sole and separate property of the military spouse, depending on the law of the particular jurisdiction.[2]

FUSFSPA became effective February 1, 1983, thereby creating an 18-month "window period" between June 26, 1981, and February 1, 1983, during which *McCarty* was the supreme law of the land. The result was that marriage dissolution judgments entered during the *McCarty* window period routinely denied any interest in military retirement benefits to nonmilitary spouses. In order to address this inequity, and pursuant to what it perceived as the intent of the Congress in passing FUSFSPA, our Legislature enacted Civil Code section 5124[3] in order to allow FUSFSPA to be applied

---

[2] 10 United States Code section 1408(c)(1) provides: "[A] court . . . may treat disposable retired or retainer pay payable to a member for pay periods beginning June 25, 1981, either as property solely of the member or as property of the member and his spouse in accordance with the law of jurisdiction of such court."

[3] Civil Code section 5124 was repealed by its own terms, effective January 1, 1986. It provided: "(a) Community property settlements, judgments, or decrees that became final on or after June 25, 1981, and before February 1, 1983, may be modified to include a division of military retirement benefits payable on or after February 1, 1983, in a manner consistent with federal law and the law of this state as it existed before June 26, 1981, and as it has existed since February 1, 1983.

"(b) Modification of community property settlements, judgments, or decrees under this section may be granted whether or not the property settlement, judgment, or decree expressly reserved the pension issue for further determination, omitted any reference to a military pension, or assumed in any manner, implicitly or otherwise, that a pension divisible as community property before June 25, 1981, and on or after February 1, 1983, was not, as of the date the property settlement, judgment, or decree became final, divisible community property.

"(c) Any proceeding brought pursuant to this section shall be brought before January 1, 1986.

"(d) This section shall remain in effect only until January 1, 1986, and on that date is repealed unless a later enacted statute which is chaptered before that date deletes or extends that date."

retroactively in California, even as to those judgments which had become final during the *McCarty* window period.

In two subsequent decisions, courts held that FUSFSPA was retroactive to the date *McCarty* was issued and could be applied to those judgments which became final *after* February 1, 1983, the effective date of the federal legislation. (*In re Marriage of Hopkins* (1983) 142 Cal.App.3d 350, 356-360 [191 Cal.Rptr. 70]; *In re Marriage of Fairfull* (1984) 161 Cal.App.3d 532, 535 [207 Cal.Rptr. 523].) Then, in *Mueller* v. *Walker* (1985) 167 Cal.App.3d 600 [213 Cal.Rptr. 442], Division One of the Fourth District Court of Appeal considered the propriety of our Legislature's attempt to allow FUSFSPA to be applied retroactively to judgments which became final *during* the *McCarty* window period. Although the *Mueller* court agreed with the *Hopkins* and *Fairfull* decisions to a certain extent, holding that FUSFSPA was not intended by Congress to be automatically retroactive to *McCarty* window cases (*id.,* at p. 605), it went on to hold that the Legislature was permitted to overcome the judicially created doctrine of res judicata and make FUSFSPA retroactive to such cases by enacting Civil Code section 5124.[4] (*Id.,* at pp. 606-609.)

More recently, two other Courts of Appeal have followed *Mueller,* concluding that the Legislature could properly overcome the res judicata bar by enacting Civil Code section 5124 to allow retroactive application of FUSFSPA to *McCarty*-window final judgments. (*In re Marriage of Castle* (1986) 180 Cal.App.3d 206, 212-213 [225 Cal.Rptr. 382]; *In re Marriage of Potter* (1986) 179 Cal.App.3d 73, 79-80 [224 Cal.Rptr. 312].)

## II. THE FACTS AND PROCEDURE

Wife commenced this proceeding by filing a petition for dissolution of marriage on September 10, 1980, several months before *McCarty* was decided by the United States Supreme Court. Despite his later claim of being domiciled in Texas, when husband filed his response on October 20, 1980, he failed to make a special appearance in order to assert lack of personal jurisdiction. Husband did not list his military pension benefits as a com-

---

[4]One month earlier, our Supreme Court observed that "no case within our memory has received less retroactive application than *McCarty:* Starting with the last paragraph of the *McCarty* opinion itself, the judicial and legislative branches, state and federal, cooperated in a massive and largely successful drive to make *McCarty* disappear—prospectively, presently and retroactively." (*Aloy* v. *Mash* (1985) 38 Cal.3d 413, 421 [212 Cal.Rptr. 162, 696 P.2d 656].) The issue before the *Mueller* court and us, however, has not yet been addressed by the Supreme Court. (*Id.,* at p. 421, fn. 5.)

munity asset (or at all). However, by checking box 9d on the Judicial Council family law form, husband affirmatively requested that the court determine all of the property rights of the parties. (See form adopted by rule 1282, Cal. Rules of Court, revised eff. Jan. 1, 1980.)

The interlocutory dissolution of marriage judgment in this case was entered on June 22, 1981, four days before *McCarty* was decided by the United States Supreme Court. In August 1981, husband moved to modify the property disposition in light of *McCarty* and pursuant to the earlier stipulation of the parties that the court would retain jurisdiction to modify the disposition of the military pension benefits in light of that anticipated decision. On September 30, 1981, while husband's motion was still pending, the final judgment was entered. Husband's motion to modify the judgment was later granted. The order granting modification of the judgment to award husband his military retirement benefits as his sole and separate property was entered in early 1982. There was no appeal from the judgment as modified and, thus, it became final during the *McCarty* window period.

On February 1, 1983, FUSFSPA became effective. At about the same time, husband was reassigned by the military from California to Kentucky and took up temporary residence in Tennessee. Several months after FUSFSPA became effective, wife moved to reopen the judgment in order to divide husband's military retirement benefits based on the new federal legislation. In September 1983, the court denied wife's motion based on the principle of res judicata.

Civil Code section 5124 was enacted in May 1983, before wife brought her initial motion to reopen the final judgment. However, it did not become effective until January 1, 1984, which was after wife's motion had been denied. As a result, in February 1984, wife filed a new motion for modification based on the explicit retroactivity provision in section 5124, subdivision (a). The trial court initially denied wife's motion on the ground that section 5124 was unconstitutional because it violated the doctrine of separation of powers in attempting to grant parties the right to reopen judgments that became final during the *McCarty* window period. On reconsideration, the court again denied the motion on the res judicata ground, but also based its ruling on the additional ground that husband's 1983 move to Tennessee and his claim of being domiciled in Texas meant that personal jurisdiction over husband for purposes of applying FUSFSPA was lacking.[5] Wife filed a timely notice of appeal.

---

[5] 10 United States Code section 1408(c)(4) provides: "A court may not treat the disposable retired or retainer pay of a member in the manner described in paragraph (1) unless the court has jurisdiction over the member by reason of (A) his residence, other than because of military assignment, in the territorial jurisdiction of the court, (B) his domicile in the territorial jurisdiction of the court, or (C) his consent to the jurisdiction of the court."

III. ANALYSIS

A. *The Court Had Personal Jurisdiction Over Husband and Subject Matter Jurisdiction to Divide Husband's Military Retirement Benefits.*

■ While there might not have been personal jurisdiction over husband in California for purposes of wife instituting a new action against him, such as an independent postjudgment action to divide the military pension benefits (see *Henn* v. *Henn* (1980) 26 Cal.3d 323, 332 [161 Cal.Rptr. 502, 605 P.2d 10]), here wife simply sought to reopen and modify the existing judgment in light of FUSFSPA pursuant to Civil Code section 5124. The trial court had originally obtained personal jurisdiction over husband for purposes of dividing his military retirement benefits based, inter alia, on his consent, his failure to make a special appearance, and his affirmative request for a determination of the property rights of the parties. Thus, the court still had personal jurisdiction over husband for purposes of modifying the disposition of property which was addressed by the (modified) judgment.[6]

■ When Congress enacted FUSFSPA, it limited the subject matter jurisdiction of state courts over military pension benefits to those instances in which personal jurisdiction existed over the military spouse other than by virtue of military assignment. (10 U.S.C. § 1408(c)(4), fn. 5, *ante.*) ■ "These limits apparently reflect a concern that military pensioners could be substantially disadvantaged by forum-shopping spouses who otherwise might seek to divide these property interests in a state never having had substantial contact with the military pension, and whose courts are not easily accessible because of distance. (See discussion in Sen.Rep. No. 97-502, 2d Sess. (1982) pp. 8-9; 1982 U.S. Code Cong. & Admin. News, pp. 1603-1604.)" (*Miller* v. *Miller* (1986) 176 Cal.App.3d 1183, 1189-1190 [222 Cal.Rptr. 652].) ■ Having previously consented to the personal jurisdiction of the California court for purposes of determining the couple's property rights (which included the military retirement benefits), husband could not later unilaterally withdraw that submission. Because personal jurisdiction still existed by virtue of consent, it follows that the trial court had subject matter jurisdiction to divide husband's military pension benefits pursuant to Civil Code section 5124 and FUSFSPA.

---

[6]Were the rule otherwise, a party to a marital dissolution proceeding could attempt to divest the court of the power to modify its own judgment by moving out of California and purporting to withdraw a previous consent to jurisdiction. For example, in a case where a judgment was entered, where neither party filed a timely notice of appeal, and where one party committed fraud in obtaining the judgment, a later motion to modify or vacate the judgment brought on the ground of fraud pursuant to Code of Civil Procedure section 473 might be opposed on the theory that the court was without personal jurisdiction to consider the motion if the fraudulent party had had the foresight to leave California after the judgment became final.

B. *Civil Code Section 5124 Was Properly Made Retroactive.*

■ As noted in *Mueller* v. *Walker, supra,* 167 Cal.App.3d 600, in California it is generally the rule that after a trial court has divided the property during a dissolution proceeding and the judgment has become final "the court loses jurisdiction to modify or alter the division made." (*Id.,* at pp. 605-606, citing *Bodle* v. *Bodle* (1978) 76 Cal.App.3d 758 [143 Cal.Rptr. 115].) However, this rule is founded upon res judicata principles and Civil Code section 4800 which specifies the manner and timing of marital property divisions. (*Decker* v. *Occidental Life Ins. Co.* (1969) 70 Cal.2d 842, 848 [76 Cal.Rptr. 470, 452 P.2d 686]; *Bodle* v. *Bodle, supra,* 76 Cal.App.3d 758 [order to show cause regarding request to modify judgment and divide military pension benefits]; *Kelley* v. *Kelley* (1977) 73 Cal.App.3d 672 [141 Cal.Rptr. 33], disapproved on other grounds *Henn* v. *Henn, supra,* 26 Cal.3d 323, 331, fn. 6 [independent postjudgment suit to divide military pension benefits]; Civ. Code, § 4800.) ■ The rule is not based on personal jurisdiction principles. In view of that circumstance, the Legislature had the ability to modify the *Decker/Bodle/Kelley* rule which it did when it enacted Civil Code section 5124 and made it retroactive.

Based upon the federal legislative record, it is clear that Congress intended to allow FUSFSPA to be applied retroactively to final *McCarty* window judgments. The Joint Explanatory Statement of the Committee of Conference is highly instructive. In it, the conferees specifically noted that "the conference report contains no prohibition against courts reopening decisions before [the date *McCarty* was decided] . . . [but] agreed that changes to court orders finalized before the *McCarty* decision should not be recognized if those changes were effected *after* the *McCarty* decision (and *before* the effective date of [FUSFSPA]) to implement the holding in that decision (for example, a modification setting aside a pre-*McCarty* division of military retired pay)." (J. Explanatory Statement of the Com. of House Conf. Rep. No. 97-749, Aug. 12, 1982, 128 Cong. Rec. 5999 (1982), italics added.) This issue was a concern of Congress not because Congress refused to condone reopening final judgments, but rather, because Congress did not want *McCarty* to necessarily govern a modification of a pre-*McCarty* judgment made during the window period, notwithstanding the fact *McCarty* was the supreme law of the land during the window period. Rather than instilling a breath of life into *McCarty,* the FUSFSPA drafters intended the statute would "*remove the effect* of the United States Supreme Court decision in *McCarty* v. *McCarty* . . . ." (Sen.Rep. No. 97-502, July 22, 1982, p. 1, as attached to the bill.)

FUSFSPA itself states that it may be applied to all cases pending when *McCarty* was decided. "[A] court may treat disposable retired or retainer

pay payable to a member for pay periods after June 25, 1981 [the day *before* the *McCarty* decision was rendered], either as property solely of the member or as property of the member and his spouse *in accordance with the law of the jurisdiction of such court.*" (10 U.S.C. § 1408(c)(1), italics added.) Thus, Congress envisioned the reopening of window period final judgments where courts had previously employed *McCarty,* if state law so provided.

The Joint Explanatory Statement of the Committee of Conference expresses the congressional intent that FUSFSPA would "apply to court orders finalized on or after the *McCarty* decision as well as to subsequent modifications." [House Report.] Neither FUSFSPA nor the legislative history references any prohibition against reopening decisions made on or after the date of the *McCarty* decision but before the passage of FUSFSPA.

The fact that Congress did not specifically refer to final judgments in section 1408(c)(1) is of no moment. Section 1006(b) of Public Law number 97-252 states that federal remittance of retirement pay pursuant to a state court order "shall apply only with respect to payments of retired or retainer pay for periods beginning on or after the effective date of this title, *but without regard to the date of any court order.* However, in the case of a court order that became final before June 26, 1981, payments under such subsection may only be made in accordance with such order as in effect on such date and without regard to any subsequent modifications." (Italics added.) If Congress had intended to dishonor *McCarty*-window final judgments that were modified *after* FUSFSPA was enacted, those judgments undoubtedly would have been referenced in the foregoing provision. They were not, thereby clearly evidencing an intent to allow such modifications.

The Joint Committee Report notes, "[T]he provisions adopted by the conferees are similar to the provisions of S. 1814 as reported by the Senate Armed Services Committee (S. Rept. 97-502). For the purpose of describing these similar provisions, the section-by-section analysis (p. 12-28) in the Senate report is referred to." The Senate Report, on page 16, states, "The purpose of [§ 1408(c)(1)] is to place the courts in the same position that they were in on June 26, 1981, the date of the *McCarty* decision, with respect to treatment of non-disability military retired or retainer pay. The provision is intended to *remove* the federal pre-emption found to exist by the United States Supreme Court and permit State and other courts of competent jurisdiction to apply pertinent State . . . laws . . . . *This power is returned to the courts retroactive to June 26, 1981.* This retroactive application will at least afford individuals who were divorced (or had decrees modified) during the interim period between June 26, 1981 and the effective date of this legislation *the opportunity to return to the courts to take advantage of this provision.*" (Italics added.) The foregoing language makes

no distinction between final and appealable judgments rendered during the *McCarty*-window period, and, on its face, applies to *all* judgments rendered during that time. Finally, the Senate Report states that "[T]he question of whether previously entered court decrees should be modified to comply with the requirements of section 1408 of Title 10 is one properly left for the determination of courts having jurisdiction to make such modifications." (Sen.Rep. No. 97-502, *supra,* p. 28.)

Congress did everything in its power to eradicate *all* vestiges of the *McCarty* decision. Because it could not *force* the state courts to allow the reopening of judgments finalized in the window period, that decision was left to the individual states as was the option to treat retirement pay "either as property solely of the member or as property of the member and his spouse *in accordance with the law of the jurisdiction.*" (10 U.S.C. § 1408(c)(1), italics added.) California law recognized retirement benefits as community property before the *McCarty* opinion and FUSFSPA merely returned that option to California. In order to remedy the inequities created by *McCarty* quickly and fairly, each state was allowed to treat decisions made final in the window period as it saw fit. California's Legislature chose to enact the corrective legislation permitted by Congress as Civil Code section 5124, thereby allowing retroactive application of FUSFSPA to *McCarty*-window final judgments.[7]

■ We also conclude that the retroactive application of Civil Code section 5124 and FUSFSPA does not violate the separation of powers doctrine and the subsidiary rule that the Legislature may not readjudicate the merits of particular judicial decisions. In *Mandel* v. *Myers* (1981) 29 Cal.3d 531 [174 Cal.Rptr. 841, 629 P.2d 935], plaintiff Mandel had obtained a judgment against various state agencies and officers. The judgment included an award of attorney's fees. The Legislature not only refused to appropriate funds to pay the attorney's fees, but also attempted to preclude satisfaction of the judgment out of the funds appropriated for the budgets of the defendant agencies. (*Id.,* at pp. 537-538.) When the attorney's fees award went unpaid for a significant time, the trial court finally issued an order commanding the state Controller to pay it out of the budget of the Department of Health Services. (*Id.,* at pp. 538-539.) Defendants challenged the order as violating the separation of powers doctrine on the theory that the court's order invaded the prerogative of the Legislature to make appropriations. On appeal, our Supreme Court affirmed the challenged order, holding that to permit the Legislature to restrict the budgets so as to preclude satisfaction of the valid

---

[7]We express our appreciation to Justice Sheila Prell Sonenshine of Division Three, Fourth Appellate District for the statutory analysis which was persuasively set forth in a previous nonpublished opinion on the same subject.

judgment would violate the separation of powers doctrine which precluded the Legislature from readjudicating that adverse judgment by subsequent legislation. (*Id.*, at pp. 539-542.)

There is nothing in *Mandel* which precludes the action taken by the Legislature in the present case. Unlike in *Mandel,* the Legislature's decision to apply FUSFSPA retroactively to *McCarty*-window judgments was not an attempt to overrule or readjudicate a particular adverse ruling. The state was not a party to the judgment in this case. More importantly, the Legislature's action was not taken with regard to any particular case. Instead, it was intended to apply to all of the cases which by mere coincidence happened to become final during the *McCarty*-window period. Lastly, Civil Code section 5124 is permissive, not mandatory. It makes it clear that the Legislature had no objection to California courts applying FUSFSPA retroactively, despite the concept of res judicata, in order to overcome the inequities created by *McCarty*. Thus, the balance of power between the legislative and judicial branches has not been adversely affected by the enactment of section 5124 because in each instance the judicial branch is left with the final decision on whether to reopen any previously final dissolution judgment. Retroactive application of FUSFSPA through Civil Code section 5124 did not violate the separation of powers doctrine.

The order denying wife's motion to modify the judgment is reversed.

Anderson, P. J., and Poché, J., concurred.