Filed 3/21/23

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| In re the Marriage of LISA and JEREMIAH J. SULLIVAN, III. | D079481 |
| LISA SULLIVAN, | |
| Respondent, | (Super. Ct. No. D560631) |
| v. | |
| JEREMIAH J. SULLIVAN III, | |
| Appellant. | |

Original proceeding on a petition for writ of mandate challenging a judgment and order of the Superior Court of San Diego County, Enrique Camarena and James Mangione, Judges.  Relief granted.

Stephen Temko and Dennis Temko for Appellant.

Higgs Fletcher & Mack, John Morris, Rachel M. Garrard, and Steven Brunolli for Respondent.

Jeremiah J. Sullivan, III, appeals from a stipulated judgment of dissolution of marriage.  He challenges a 2018 order that was incorporated into the stipulated judgment, in which the family court found that it lacked jurisdiction to divide his ex-wife Lisa Sullivan's military pension under the

Federal Uniformed Services Former Spouse's Protection Act (FUSFSPA). (10 U.S.C. § 1408.) Jeremiah argues that the court erred because Lisa "consent[ed] to the jurisdiction of the Court." (*Id.* at subd. (c)(4)(C).)

We conclude that the stipulated judgment is not appealable because it does not resolve all issues between the parties. At the parties' joint request, however, we exercise our discretion to treat the appeal as a petition for writ of mandate. On the merits, we reject the trial court's ruling that a service member must explicitly and specifically consent to the court's authority to divide her military retirement under the FUSFSPA. We further conclude that Lisa did consent to the jurisdiction of the court within the meaning of the FUSFSPA by voluntarily filing her dissolution petition in California, seeking a judicial confirmation of "all" her separate property acquired before marriage, asking the court to determine "any" community property assets, and requesting the appointment of an expert under Evidence Code section 730 to determine a proposed division of the parties' retirement accounts. Accordingly, we will grant appropriate writ relief directing the family court to vacate the stipulated judgment and the relevant portion of the 2018 order.

FACTUAL AND PROCEDURAL BACKGROUND

A. *The Marriage*

Lisa joined the military in August 1993. She and Jeremiah met at the Naval Justice School in Newport, Rhode Island in 1994. They are both lawyers. Lisa has remained on active duty as a Navy lawyer continuously since her graduation from Naval Justice School. Jeremiah serves in the Navy Reserves and has his own law practice in California.

Lisa and Jeremiah were married in December 2000. They have two children. Lisa is currently eligible to retire from the Navy with full benefits

2

but has chosen to remain on active duty in San Diego. She is not licensed to practice law in California.

B.    *Petition for Dissolution of Marriage*

In April 2016, Lisa filed a petition for dissolution of marriage in San Diego County Superior Court using Judicial Council Form FL-100. In section 9b of the petition, she asked the court to "[c]onfirm as [her] separate property . . . [a]ll property acquired prior to the date of marriage . . . ." In section 10b, she also asked the court to "[d]etermine rights to community and quasi-community assets and debts" and checked a corresponding box that was pre-printed with the language: "All such assets and debts are listed . . . as follows (*specify*): . . . ." In the blank space immediately below, she specified: "The nature and extent of any community and quasi-community assets and debts are unknown to Petitioner at this time and are to be determined during the course of this proceeding." She then listed four real properties and a sailboat and concluded: "Petitioner desires the parties to reach a full agreement on all issues."

Lisa also sought spousal support from Jeremiah. In his response, Jeremiah sought spousal support from Lisa.

C.    *Dispute Over Lisa's Military Pension*

In January 2018, the parties participated in an unsuccessful private mediation. At the mediation, Jeremiah notified Lisa that he would be making a "*Gillmore* election" for immediate payment of his interest in her military retirement benefits. (*In re Marriage of Gillmore* (1981) 29 Cal.3d 418 (*Gillmore*).)[1] In response, Lisa "rejected any notion that [Jeremiah] was

---

[1]    In *Gillmore*, the Supreme Court held that if a spouse is eligible to receive retirement benefits at the time of dissolution, but chooses not to, the non-employee spouse may demand immediate compensation for his or her community property share of the retirement benefit. (*Gillmore*, *supra*, 29

3

entitled to [a] *Gillmore* election." Jeremiah's counsel sent a follow-up letter again notifying Lisa that he was making a *Gillmore* election.

The next month, Lisa filed a request for order appointing an expert under Evidence Code section 730. Specifically, Lisa requested that an expert be appointed to determine various matters relating to spousal support and division of property, including her "separate and the community interest in [her] investment accounts and the parties' retirement accounts," and to prepare "a proposed division of the investment and retirement accounts." In a paragraph of her supporting declaration captioned "Retirement Division and Investment Division", Lisa noted that "Jeremiah and I both will receive military retired pay when we retire," as well as additional retirement and non-retirement accounts. Lisa asserted: "The community and separate interests in those accounts must be determined to permit us to equitably divide the community estate. Accordingly, I request that the Court appoint an Evidence Code section 730 expert to perform the necessary analysis to divide those accounts."

Two months later, in April 2018, Jeremiah filed a request for order for immediate division and payment of Lisa's military retirement benefits under *Gillmore*. In response, Lisa filed a declaration objecting to the court's exercise of jurisdiction over her military retirement benefits under FUSFSPA

Cal.3d at pp. 422–429.) The court noted that there were "various ways" to order the compensation, including immediate payment of the full present value or monthly payments over time. The court stated that "the exact method of distribution must be left to the discretion of the trial court . . . ." (*Id*. at p. 429.) The court further emphasized: "Any inequities caused by the immediate distribution of retirement benefits can be resolved through adjustments in spousal support." (*Id*. at p. 428.) California courts have consistently applied *Gillmore* to military retirement benefits. (See, e.g., *In re Marriage of Castle* (1986) 180 Cal.App.3d 206, 214–215; *In re Marriage of Jacobson* (1984) 161 Cal.App.3d 465, 472–473 (*Jacobson*).)

and *In re Marriage of Tucker* (1991) 226 Cal.App.3d 1249 (*Tucker*).  She also filed a separate motion for leave to amend her petition for marital dissolution to object to the court's exercise of jurisdiction over her military retirement benefits.[2]  In her declarations, Lisa asserted that when she filed her petition, she did not know that she could object to the court's jurisdiction over her military retirement benefits; she first learned that she could object after Jeremiah filed his *Gillmore* request; and if Jeremiah's *Gillmore* request were granted, she would not be able to support herself and the children, she would likely have to leave the Navy, and she would have to relocate because she is not licensed to practice law in California.

Jeremiah argued that Lisa had consented to the court's jurisdiction over her military pension by voluntarily filing her dissolution petition in California, submitting herself to the court's jurisdiction, and asking the court to determine the parties' rights to community and quasi-community assets and debts.  He also argued that having so consented, Lisa could not divest the court of jurisdiction by retracting her consent.

D.    *Family Court's FUSFSPA Ruling*

In September 2018, the family court (Hon. Enrique Camarena) held a hearing on matters including its jurisdiction over Lisa's military retirement benefits.  The court issued a tentative ruling orally at the beginning of the

---

[2]    As part of this motion, Lisa sought leave to amend the allegation of her petition that she was a resident of California.  She explained that she was in California only on military orders, and her domicile was actually in New Jersey.  Because Jeremiah does not argue that the trial court had jurisdiction over Lisa's military pension by virtue of her place of residence or domicile, this is not relevant to our decision.

5

hearing, then adopted its tentative as the final ruling after hearing from counsel.

The court ruled that it lacked jurisdiction over Lisa's military retirement benefits because Lisa had never "explicitly" consented to such jurisdiction under FUSFSPA, title 10 United States Code section 1408(c)(4)(C). It concluded that Lisa's mere filing of the dissolution petition was not enough because there was "no explicit indication that Lisa consented to the court's division of the military pension" and "[h]er failure to object cannot be deemed to constitute consent." The court further noted: "Here, Lisa specifically listed in Section 10(b) of the petition the community property that she wanted the court to divide . . . . And . . . the paragraph that she typed out 'as listed below' does not include the military pension in that paragraph."

The court also rejected Jeremiah's argument that Lisa had consented by affirmatively requesting the appointment of an expert to determine the parties' respective interests in their retirement accounts. The court explained: "[I]t is not consent. Because it's not explicit. It's at best implied . . . . But until she tells me explicitly, 'I'm okay with the Court dividing my military pension,' I think it is a bright line."

The family court acknowledged: "I don't think there's been a case that explicitly states what I'm finding. In my view, that's the straight interpretation of [title 10 United States Code section] 1408. We should have an explicit consent."

Following the hearing, the court issued a minute order denying Jeremiah's *Gillmore* request. The court explained: "In order for a court to obtain jurisdiction to divide a pension by way of consent, it makes sense that such consent should be to the division itself, and not to some ancillary

6

matter. . . . As in *Tucker*, in this case Lisa consented only 'to the trial court's resolution of certain portions of the dissolution action.' . . . The Petition and the Response listed the property the parties were dividing, without listing the military pension." "[T]here is no explicit indication that Lisa consented to the California court's division of her military pension. Lisa's failure to object to California's jurisdiction to divide certain enumerated property apart from the pension cannot be deemed to constitute consent to divide the pension itself." Distinguishing *In re Marriage of McDonough* (1986) 183 Cal.App.3d 45 (*McDonough*), the court stated: "Here, in contrast, Lisa did not affirmatively request that the court divide all of the parties' community property. On the contrary, Lisa specifically listed, in section 10(b) of the Petition, the community property to be divided between the parties; the military pension was not included on that list." "[A]bsent Lisa's explicit consent, the Court lacks jurisdiction to divide her military pension."

The court also found that Lisa did not consent to jurisdiction by requesting appointment of an expert to propose a division of the parties' retirement accounts. The court explained: "Lisa's acknowledgment that the military pension existed is not a consent to jurisdiction. Certainly seeking an expert evaluation to assist in even distribution of the community property . . . is a way to promote and hasten settlement or prepare for trial."

In light of this ruling, Lisa withdrew her request to amend her petition.

Jeremiah filed a premature notice of appeal from the court's order denying his *Gillmore* request. (*Sullivan v. Sullivan* (May 15, 2020, D075177) [nonpub. opn.].) We dismissed the appeal because it was not from an appealable order or final judgment.

7

E.    *Stipulated Judgment*

In June 2021, the parties agreed to a stipulated judgment of marital dissolution, which was signed and filed by the court.  As to Lisa's military retirement benefits, the judgment states:  "There is no agreement that [Lisa] submits to California jurisdiction over her military retirement benefits acquired as a result of her service with the U.S. Navy.  The findings and orders detailed in the Findings and Orders after Hearing filed December 6, 2018 with regard to jurisdiction to divide and apportion [Lisa]'s military retired pay, and [Jeremiah]'s request for immediate award pursuant to the *Gillmore* case, are incorporated as part of this judgment to permit [Jeremiah] to appeal that issue . . . ."

As to child support, the stipulated judgment states that each party will pay their own childcare costs, but it also provides:  "The Court reserves jurisdiction to order child support retroactive to May 1, 2020, until after a decision is rendered on [Jeremiah]'s appeal of the *Gillmore*/jurisdiction issue that he has raised or upon the written agreement between the parties."

As to spousal support, the stipulated judgment merely states:  "The Court reserves jurisdiction to order spousal support retroactive to May 1, 2020, until after a decision is rendered on [Jeremiah]'s appeal of the *Gillmore*/jurisdiction [issue] he has raised or upon written agreement between the parties.  Spousal support jurisdiction shall terminate upon either party's remarriage, death or further order of the Court."

Jeremiah has now appealed from the stipulated judgment.

DISCUSSION

I

We requested supplemental briefing from the parties on the appealability of the stipulated judgment.  We now conclude that the

8

judgment is not appealable, but we exercise our discretion to treat it as petition for writ of mandate.

"Ordinarily a judgment entered pursuant to a stipulation is not appealable." (*McMahon v. Craig* (2009) 176 Cal.App.4th 1502, 1508, fn. 1.) "But an exception exists where the appellant's consent to judgment was given merely to facilitate an appeal following the trial court's adverse determination of a critical issue." (*Ibid.*) As the stipulated judgment recites, the parties here consented to the stipulated judgment to facilitate an appeal from the trial court's 2018 ruling on Jeremiah's *Gillmore* request for immediate payment of his community property interest in Lisa's military retirement benefits. (*Gillmore, supra*, 29 Cal.3d 418.)

"However, the exception may not be invoked when . . . the stipulated judgment fails to dispose of all claims between the parties." (*Harrington-Wisely v. State of California* (2007) 156 Cal.App.4th 1488, 1496.) Here, each party sought spousal support from the other, but the stipulated judgment does not dispose of the issue. The stipulated judgment merely states that the trial court reserves jurisdiction to order spousal support (retroactive to May 1, 2020) until after a decision is rendered in this appeal. A similar provision states that the trial court reserves jurisdiction to order child support retroactively until after the disposition of this appeal. Without a final determination of the support issues, we conclude that the stipulated judgment is not appealable. (See, e.g., *In re Marriage of Griffin* (1993) 15 Cal.App.4th 685, 687–689 [order valuing community property not an appealable final judgment where spousal support and other property issues remained to be determined].)

We must therefore consider whether to treat the appeal as a writ petition. In response to our request for supplemental briefing, the parties

9

jointly requested that we treat the appeal as a writ petition because the remaining support issues cannot be determined without first resolving the issues over Lisa's military pension and its effect on the parties' respective incomes; the jurisdictional issue regarding Lisa's military pension is fully briefed and the record is adequate to decide the matter; there is no indication that the trial court would appear as a party in a writ proceeding; and it would be a waste of judicial and party resources to remand the matter back to the trial court when a key jurisdictional issue affecting the amount of income available for support remains unresolved. In these circumstances, we agree that it is appropriate to treat the appeal as a writ petition and we exercise our discretion to do so. (See, e.g., *Olson v. Cory* (1983) 35 Cal.3d 390, 400–401; *H.D. Arnaiz, Ltd. v. County of San Joaquin* (2002) 96 Cal.App.4th 1357, 1366–1367.)

II

On the merits, the sole issue before us is whether the family court erred in ruling that it lacked jurisdiction over Lisa's military retirement benefits under FUSFSPA. Jeremiah argues that Lisa expressly and impliedly consented to the court's jurisdiction over her military retirement. Lisa argues that FUSFSPA consent cannot be implied and that she never expressly consented to have the court divide her military pension.

A.     *Standard of Review*

As the parties acknowledge, the jurisdictional issue is subject to de novo review because there are no material factual issues in dispute. (*Robbins v. Foothill Nissan* (1994) 22 Cal.App.4th 1769, 1774.)

B.     *FUSFSPA*

Congress enacted FUSFSPA after the United States Supreme Court's ruling in *McCarty v. McCarty* (1981) 453 U.S. 210, which held that federal

10

law preempted the application of a state's community property laws to divide a military pension.  In response, "Congress sought to change the legal landscape created by the *McCarty* decision."  (*Mansell v. Mansell* (1989) 490 U.S. 581, 587 (*Mansell*).)  By enacting FUSFSPA, Congress gave state courts the power to divide military pensions according to state law under specified conditions.  (10 U.S.C. § 1408(c)(1); *Tucker*, *supra*, 226 Cal.App.3d at p. 1254.)

Under FUSFSPA, a state court may not exercise the power to divide a military pension "unless the court has jurisdiction over the [service] member by reason of (A) his residence, other than because of military assignment, in the territorial jurisdiction of the court, (B) his domicile in the territorial jurisdiction of the court, or (C) his consent to the jurisdiction of the court."  (10 U.S.C. § 1408(c)(4).)  The "minimum contacts" theory of personal jurisdiction is "conspicuously" and "purposefully absent" from this list.  (*In re Marriage of Hattis* (1987) 196 Cal.App.3d 1162, 1167 (*Hattis*).)  As a result, a service member's minimum contacts with the forum alone are insufficient to confer jurisdiction over her to divide a military pension.  (*Ibid.*)

Congress enacted this jurisdictional provision "in response to concerns about 'forum-shopping' spouses who might seek to divide the pension in a state with more favorable laws, but with little contact with the pensioner."  (*Hattis*, *supra*, 196 Cal.App.3d at p. 1167; see also *Mansell*, *supra*, 490 U.S. at p. 591 ["[10 U.S.C.] § 1408(c)(4) prevents spouses from forum shopping for a State with favorable divorce laws"].)  Title 10 United States Code section 1408(c)(4) now provides the exclusive means for a state court's exercise of personal jurisdiction over a service member in dividing her military pension.[3]  (*Hattis*, at p. 1167.)

---

[3]     Some California courts have construed the FUSFSPA in terms of both personal and subject matter jurisdiction.  (See, e.g., *McDonough*, *supra*, 183

C.    *Consent to Jurisdiction Under FUSFSPA*

As noted, the trial court ruled that it lacked jurisdiction over Lisa's military pension under section 1408(c)(4)(C) because she did not give explicit and specific consent to the court's division of her military pension.  We disagree and conclude that Lisa did "consent to the jurisdiction of the court" within the meaning of FUSFSPA.  (10 U.S.C. § 1408(c)(4)(C).)

We begin with established principles of personal jurisdiction under both state and federal law.  "Consent may be a basis for personal jurisdiction."  (*Thomson v. Anderson* (2003) 113 Cal.App.4th 258, 266.)  "A person's consent to jurisdiction 'may be expressed by words or by conduct.' " (*Szynalski v. Superior Court* (2009) 172 Cal.App.4th 1, 7 (*Szynalski*), quoting Rest.2d, Conf. of Laws (1971) § 32, com. a.)  "Consent to a court's jurisdiction may also be *implied* by conduct."  (*Nobel Farms, Inc. v. Pasero* (2003) 106 Cal.App.4th 654, 658 (*Nobel Farms*), italics added.)  "A variety of legal arrangements have been taken to represent express *or implied* consent to the personal jurisdiction of the court."  (*Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee* (1982) 456 U.S. 694, 703 (*Insurance Corp.*), italics added.)

"Specifically, when a party has availed itself of the courts of California, that party is held to have impliedly consented to [personal] jurisdiction in

Cal.App.3d at p. 52 ["When Congress enacted FUSFSPA, it limited the subject matter jurisdiction over military pension benefits to those instances in which personal jurisdiction existed over the military spouse other than by virtue of military assignment"].)  This makes no difference to our analysis of the consent issue.  By allowing a service person to consent to the court's exercise of personal jurisdiction over her, and thereby consent to the court's subject matter jurisdiction over her military pension, Congress necessarily created an exception to the usual rule that subject matter jurisdiction cannot be conferred by consent.

12

any action related to the action it brought." (*Sea Foods Co., Ltd. v. O.M. Foods Co., Ltd.* (2007) 150 Cal.App.4th 769, 786 (*Sea Foods*).) "The United States Supreme Court has also long recognized that when a nonresident plaintiff commences an action, he submits to the court's personal jurisdiction on any cross-complaint filed against him by the defendant. . . By choosing a particular forum, plaintiff is considered to have voluntarily submitted to the court's jurisdiction 'for all purposes for which justice to the defendant requires his presence.'" (*Nobel Farms*, *supra*, 106 Cal.App.4th at p. 658; see also Rest.2d Conf. of Laws (1988 rev.) § 34 ["A state has power to exercise judicial jurisdiction over an individual who brings an action in the state with respect to a claim that arose out of the transaction which is the subject of the action or is one that may in fairness be determined concurrently with that action"].) "The plaintiff having, by his voluntary act in demanding justice from the defendant, submitted himself to the jurisdiction of the court, there is nothing arbitrary or unreasonable in treating him as being there for all purposes for which justice to the defendant requires his presence. It is the price which the state may exact as the condition of opening its courts to the plaintiff." (*Adam v. Saenger* (1938) 303 U.S. 59, 67–68.)

We conclude that these general principles of law apply to the consent provision of the FUSFSPA. (10 U.S.C. § 1408(c)(4)(C).) Although we recognize that courts in other jurisdictions are divided on the issue, we find more persuasive the majority view that a service member need not give specific or explicit consent to the court's jurisdiction to divide her military pension. As one court has explained: "[F]ederal law at the time the [FUSFSPA] was enacted in 1982 recognized consent to jurisdiction could be express or implied (also referred to as constructive). In particular, precedent recognized implied consent to personal jurisdiction by participating in state

court proceedings.  Congress is presumed to have known this at the time it enacted [FUSFSPA], and we further presume Congress meant to incorporate that meaning unless it stated otherwise. . . .  Congress did not express a contrary intent when it adopted the [FUSFSPA]."  (*In re Marriage of Williams* (Kan. 2018) 307 Kan. 960, 978 [417 P.3d 1033, 1045].)  We agree that when Congress authorized "jurisdiction over the [service] member by reason of . . . his consent to the jurisdiction of the court" (10 U.S.C. § 1408(c)(4)), it presumptively intended to incorporate existing law on express *or* implied consent to personal jurisdiction.

We therefore reject the trial court's ruling that a service member must explicitly and specifically consent to the court's authority to divide her military retirement.  (See Captain Kristine D. Kuenzli, *Uniformed Services Former Spouses' Protection Act: Is There Too Much Protection for the Former Spouse?* (1999) 47 A.F. L. Rev. 1, 19 [noting that the "majority of jurisdictions" have rejected such a requirement].)  "Since no requirement exists for the member to specifically consent to the court's authority to divide the military retirement pay, this reading of the statute seems appropriate.  After all, the [FUSFSPA] only requires consent to the jurisdiction of the court, not consent to the court's authority to divide the pension."  (*Ibid.*)

"Had Congress intended specific consent to be a requirement, it would have been a simple matter to draft the statute to do so."  (*Kildea v. Kildea* (Wis.Ct.App. 1988) 143 Wis.2d 108, 114 [420 N.W.2d 391, 393] [holding that FUSFSPA "only requires consent to the jurisdiction of the court, not consent to the court's authority to divide the pension"]; see also *Pierce v. Pierce* (Miss. 2014) 132 So.3d 553, 562 ["Other states have held that consent by a military spouse may be express or implied, and that a general appearance coupled with a failure to timely object to personal jurisdiction constitute implied

14

consent under Section 1408(c)(4)(C)"]; *Davis v. Davis* (Ariz.Ct.App. 2012) 230 Ariz. 333, 337 [284 P.3d 23, 27] ["we agree with those courts holding that a state court may exercise personal jurisdiction over a military member who makes a general appearance without expressly contesting personal jurisdiction"]; *Judkins v. Judkins* (1994) 113 N.C.App. 734, 737 [441 S.E.2d 139, 140] [holding defendant consented to personal jurisdiction under FUSFSPA by making a general appearance and seeking affirmative relief in his answer without contesting personal jurisdiction]; *White v. White* (La.Ct.App. 1989) 543 So.2d 126, 127–128 [holding FUSFSPA "does not require express consent" and service member "can give implied consent to a state's jurisdiction by making a general appearance, waiving all jurisdictional objections . . . ."].)

We find unpersuasive the minority view that a service member must expressly and specifically consent to the court's jurisdiction over her military retirement benefits. (See, e.g., *Williams v. Williams* (S.C.Ct.App. 2022) 436 S.C. 550, 595 [873 S.E.2d 785, 809–810]; *Wagner v. Wagner* (2001) 564 Pa. 448, 461 [768 A.2d 1112, 1119].) These cases relied on the fact that the FUSFSPA jurisdictional provision begins with the language: "A court may not treat the disposable retired pay of a member *in the manner described in paragraph (1)* unless the court has jurisdiction over the member by reason of . . . ." (10 U.S.C. § 1408(c)(4), italics added.) They reason that because the referenced "paragraph (1)" deals with the division of military retirement benefits, the consent provision of subdivision (c)(4)(C) must be read to require the service member's specific consent to such a division. (*Williams*, at p. 595; *Wagner*, at p. 461.)

In our view, this reading conflicts with the plain meaning of the statute and conflates FUSFSPA's substantive law provision (subdivision (c)(1)) and

15

its jurisdictional provision (subdivision (c)(4)).  The substantive law provision merely states that a state court may treat military retirement pay "either as property solely of the member or as property of the member and his spouse *in accordance with the law of the jurisdiction of such court*."  (10 U.S.C. § 1408(c)(1), italics added.)  In other words, it allows state courts to apply substantive state law in adjudicating the division of military retirement benefits.  The jurisdictional provision in turn states that a court may divide military retirement pay "in the manner described" in the substantive law provision if "the court has jurisdiction over the [service] member by reason of" her residence, domicile, or consent.  (10 U.S.C. § 1408(c)(4).)  In other words, state substantive law will apply to the division of a military pension under subdivision (c)(1) only if the state court has jurisdiction over the service member by reason of her residence, domicile, or consent under subdivision (c)(4).  But the statute does not in any way suggest that the phrase "jurisdiction over the [service] member by reason of" her "consent to the jurisdiction of the court" (10 U.S.C. § 1408(c)(4)(C)) requires explicit consent to the court's jurisdiction over military retirement pay.

California cases are consistent with our reading of the statute.  In *McDonough*, for example, the husband checked a box on the Judicial Council form requesting that the court determine all property rights of the parties— but did not specifically mention his military pension.  (*McDonough*, *supra*, 183 Cal.App.3d at pp. 50–51.)  Yet the court still concluded that the husband had "consented to the personal jurisdiction of the California court for purposes of determining the couple's property rights (which included the military retirement benefits) . . . ."  (*Id*. at p. 52; see also *Jacobson*, *supra*, 161 Cal.App.3d at p. 470 [by electing to respond to wife's petition and foregoing his motion to dismiss on forum non conveniens ground, husband made a

16

general appearance and thereby consented to the jurisdiction of the court and the application of the substantive law of California under FUSFSPA].)

Based on our interpretation of the statute, we conclude that Lisa consented to the court's jurisdiction over her to divide her military pension. It was Lisa who chose to file her petition for dissolution of marriage in a California court.  By doing so, she voluntarily submitted herself to the court's jurisdiction and consented to its personal jurisdiction over her in any matter related to the dissolution proceeding.  (See *Sea Foods*, *supra*, 150 Cal.App.4th at p. 786; *Nobel Farms*, *supra*, 106 Cal.App.4th at pp. 658–659.)  The division of Lisa's military retirement benefits (attributable to her Navy employment both before and after the marriage) was directly related to her request for confirmation of her separate property and division of the community property.  (See *In re Marriage of Wilson* (1974) 10 Cal.3d 851, 854 (*Wilson*) ["Pension rights which result from employment both before and after marriage derive from both separate and community property" and "must be apportioned upon division of the assets"].)

In her dissolution petition, Lisa specifically asked the court to "[c]onfirm as [her] separate property . . . [a]*ll property* acquired prior to the date of marriage . . . ."  (Italics added.)  This necessarily included the portion of her military retirement attributable to her Navy employment before marriage, which constituted her separate property.  (*In re Marriage of Stenquist* (1978) 21 Cal.3d 779, 788; Fam. Code, § 770, subd. (a)(1).)  Lisa also asked the court to determine her rights to any community property assets acquired *during* the marriage.  Although the filled-out portion of her petition only listed four real properties and a sailboat as community property, it also stated more broadly:  "The nature and extent of *any* community and quasi-community assets and debts are unknown to Petitioner at this time and *are*

17

*to be determined during the course of this proceeding.*" (Italics added.) Thus, the petition used broad language to request a judicial determination of Lisa's rights to "any" community property. The portion of Lisa's military retirement attributable to her Navy employment during the marriage is community property. (*Wilson, supra*, 10 Cal.3d at p. 854.) And Lisa's petition also expressed her desire for "a full agreement on all issues" relating to the community property. By asking the court to confirm as her separate property *all* property acquired before marriage, and determine her rights to *any* community property acquired during the marriage, Lisa consented to the court's exercise of jurisdiction over her military retirement benefits.

Finally, Lisa specifically asked the court to appoint an expert under Evidence Code section 730 to determine her "separate and the community interest in . . . the parties' retirement accounts" and "a proposed division of the . . . retirement accounts." Contrary to the trial court's ruling, this was not merely an "acknowledgment that the military pension existed . . . ." Lisa deliberately invoked the court's legal authority to appoint an expert to assist it in dividing property at issue in the dissolution proceeding, *including* the parties' retirement accounts. (Evid. Code, § 730; *In re Marriage of Drivon* (1972) 28 Cal.App.3d 896, 898.) By affirmatively invoking the authority of the court to assist in dividing the retirement accounts, Lisa once again consented to the court's jurisdiction over her military retirement benefits. (See *Szynalski, supra*, 172 Cal.App.4th at p. 8 ["Seeking and obtaining the benefits of court action is another means of expressing consent to the court's jurisdiction"]; *Sea Foods, supra*, 150 Cal.App.4th at pp. 786–787 [out-of-state creditor that availed itself of California's summary attachment procedure thereby subjected itself to personal jurisdiction in debtor's related fraud action]; see also *Insurance Corp., supra*, 456 U.S. at p. 704 ["the Court has

18

upheld state procedures which find constructive consent to the personal jurisdiction of the state court in the voluntary use of certain state procedures"].)

The *Tucker* decision is consistent with our holding. In contrast to this case, the service member in *Tucker* was the respondent, not the petitioner who filed for dissolution and chose the forum. The service member in *Tucker* did not voluntarily submit himself to the court's jurisdiction; he never expressly or impliedly consented to allow the court to divide his military pension; and his counsel explicitly objected to the court's jurisdiction over his military pension at every stage of the proceedings, starting with his initial conversation with the petitioner's counsel. (*Tucker, supra*, 226 Cal.App.3d at pp. 1252–1253, 1258.) The facts of this case bear little resemblance to *Tucker*.[4]

In sum, we conclude that the trial court had jurisdiction over Lisa and her military retirement benefits "by reason of . . . [her] consent to the

---

[4]    In *Tucker*, the court ruled that a service member "may both agree California has jurisdiction over nonpension issues and at the same time argue California has no power to divide his or her military pension." (*Tucker, supra*, 226 Cal.App.3d at p. 1256.) Although this may be so when the service member is the responding party in a dissolution proceeding, as in *Tucker*, it is questionable whether a service member who files for dissolution in a California court may simultaneously withhold consent to the court's exercise of jurisdiction over her military pension. This would be contrary to the usual rule that the plaintiff who chooses the forum impliedly consents to personal jurisdiction in related matters. (*Sea Foods, supra*, 150 Cal.App.4th at p. 786; *Nobel Farms, supra*, 106 Cal.App.4th at pp. 658–659.) Moreover, Congress's concern about forum-shopping does not apply to a service member like Lisa, who is the petitioner and voluntarily chose the forum herself. We need not decide this question, however, because Lisa did not withhold her consent to the court's jurisdiction over her military pension when she filed her dissolution petition and specifically requested judicial confirmation of her separate property and her interest in any community property.

19

jurisdiction of the court." (10 U.S.C. § 1408(c)(4).) Lisa concedes that "[o]nce a party has generally consented to a court's jurisdiction, it may not be attacked later." (*In re Marriage of Sarles* (1983) 143 Cal.App.3d 24, 29.) Accordingly, the trial court erred by finding that it lacked jurisdiction to divide Lisa's military pension.

## DISPOSITION

Let a peremptory writ of mandate issue directing the superior court to (1) vacate the stipulated judgment and the portion of its order of September 12, 2018 denying Jeremiah's request for an order dividing Lisa's military pension, (2) enter a new order granting Jeremiah's request for a division of Lisa's military pension and determining its value and the appropriate manner of distribution, and (3) conduct further proceedings necessary to resolve any remaining issues, including spousal support. Jeremiah is entitled to recover his costs in this proceeding.


BUCHANAN, J.

WE CONCUR:


DATO, Acting P. J.


DO, J.

20